Desmond, J.
This action is for a judgment declaring plaintiff Sidener to be the rector of the Episcopalian Church of the Holy Trinity in Brooklyn, and restraining defendants from interfering with' the conduct of religious services therein or with the property, funds and management of the church. The Official Referee dismissed the complaint after a trial but the Appellate Division reversed and ordered judgment as demanded in the complaint. The only real question is: were there lawful quorums present at the two vestry meetings which by vote of a majority of the whole number of authorized members chose plaintiff Sidener as rector?
Defendants Ramel, Brooks and Burke were at the time of the vestry meetings, February 6 and 7, 1956, hereafter referred to, members of the parish vestry. Defendant Melish was assistant minister of the Church of the Holy Trinity from 1939 and by vestry action in 1951 had been authorized to continue as assistant until a new rector should be elected and installed (to fill a vacancy which had existed since 1949) and until such election should be “ canonically finalized ”. On February 6 and 7, 1956 the vestry as authorized by Trinity Church’s charter and by statute (see Religious Corporations Law, § 41) consisted of 2 churchwardens and 9 vestrymen but there were 2 vacancies among the vestrymen. Had there been a rector he would have been an additional member ex officio (Religious Corporations Law, § 41). On each of those February dates there was held a vestry meeting duly called by the clerk and presided, over by a churchwarden (see Religious Corporations Law, § 42). In attendance at those meetings were the 2 churchwardens and 4 of the vestrymen, being a majority of the whole authorized vestry of 11. Defendants Ramel, Brooks and Burke refused to attend. At the first of those two meetings the 6 members present communicated to the Ecclesiastical Authority (the Bishop) of the Diocese of Long Island, in which this parish is situated, their proposal to elect Dr. Sidener as rector. On February 7, 1956 the Ecclesiastical Authority notified the vestry of approval of such election (see General Canon 47, subd. 2) and at the meeting of February 7, 1956 the election of Dr. Sidener and the fixing of his salary and allowance, etc., was unanimously voted by the 6 members present. Later an ‘1 instrument of presentation ” of the new rector was signed by the churchwardens and recorded in the diocesan archives (see General Canon 47, subd. *481 3). On a later day, the Bishop conducted a ceremony instituting Dr. Sidener as rector (see Book of Common Prayer, p. 569, which is part of the Canon law). The approval of the Bishop is required by the canons of the General Convention of the Church in the United States and the canons of the Diocese of Long Island, and was in this instance given as so required. However, defendant Melish and the 3 defendant vestrymen disputed and continue to dispute the validity of the election.
The Official Referee held that each of the February, 1956 meetings lacked a quorum. His reliance was on that part of section 42 of the Religious Corporations Law, which reads thus:
“ To constitute a quorum of the vestry or board of trustees, there must be present either:
1. The rector and at least a majority of the whole number of wardens and vestrymen, or
2. One churchwarden and one more than a majority of the vestrymen or both churchwardens and a majority of the vestrymen ”.
Neither of those requirements, wrote the Referee, was satisfied by the attendance of 2 churchwardens and 4 vestrymen. The dissent in the Appellate Division expressed that same view. The Appellate Division majority took these positions: first, that since the election of a rector is an ecclesiastical matter the law of the church rather than civil statute law must under our Federal Constitution be controlling (Watson v. Jones, 13 Wall. [U. S.] 679; Kedroff v. St. Nicholas Cathedral, 344 U. S. 94); second, that because of the constitutional prohibition against State interference in such matters section 42 (supra) is to be construed as not applicable to such an election; third, that certain language in section 42 and in section 25 of the Religious Corporations Law justifies a holding that the above-quoted quorum provisions of section 42 are not applicable to meetings held for the election of a rector, and, fourth, that the Bishop’s official and formal pronouncement of Dr. Sidener’s election was evidence of the church law as to quorum. The Presiding Justice, writing a concurring opinion for reversal, found it unnecessary to discuss the constitutional question posed by the majority of his court. He concluded (and so do we) that on their face and in their setting and in the light of legislative history the quorum requirements of section 42 have no reference to the election of a rector, and that the only appli *482 cable law is the Canon law of the church. Section 2 of General Canon 11 of the Protestant Episcopal Church of the United States says that of any body consisting of several members, “ a majority of said members, the whole having been duly cited to meet, shall be a quorum; and a majority of the quorum so convened shall be competent to act ”. These two meetings of the Holy Trinity vestry were attended by a majority of the whole number of the vestry and all voted for Dr. Sidener’s election, so the Canon’s tests of validity were satisfied.
Accordingly, and passing over all other questions as unnecessary to this discussion, we will do no more than state our reasons for agreeing that the quorum rules of section 42 have no relevance here. That section is a long one and deals with many details as to membership, meetings and powers of Episcopalian parish vestries. In one form or another there has been such a statute in this State since the early nineteenth century (see Rev. L. 1813, ch. 60 [2 Van N. & W. 212, 213]) and it has always authorized the vestry to call or elect a rector. When the original Religious Corporations Law was enacted in 1895 (L. 1895, ch. 723) it included an article II headed “ Special Provisions for the Incorporation and Government of Protestant Episcopal Parishes or Churches ” quite similar to present article 3 of the Religious Corporations Law. That 1895 revision or consolidation of the general laws respecting religious bodies contained two new statements pertinent to our inquiry. For the first time there were requirements as to the necessary quorum for vestry meetings, as follows (§ 32):
“ To constitute a quorum of the vestry or board of trustees there must be present either:
1. The rector, at least one of the churchwardens, and a majority of the vestrymen or
2. The rector, both churchwardens and one less than a majority of the vestrymen, or
3. If the rector be absent from the diocese and shall have been so absent for over four calendar months, or if the meetings be called by the rector and he be absent therefrom, or be incapable of acting, one churchwarden and a majority of the vestrymen, or both churchwardens and one less than a majority of the vestrymen.”
Not only did these quoted requirements not refer specifically to the election of a rector but in the same revision there was *483 another change which could have no purpose other than to make it clear that the election of a rector was to be controlled not by the Religious Corporations Law but by Canon law. The statute had since 1705 authorized the vestry to elect a rector (1 Colonial Laws of N. Y., p. 578). The 1895 revision added a reference to Canon law, making the last sentence of then section 32 read exactly as does the last sentence of present section 42 of the Religious Corporations Law: “ The vestry may, subject to the canons of the Protestant Episcopal church in the United States, and of the diocese in which the parish or church is situated, by a majority vote, elect a rector to fill a vacancy occurring in the rectorship of the parish, and may fix the salary or compensation of the rector.”
That is a plain statement that a majority of the whole vestry has the power to call a rector, but that their exercise of that power is subject to the General Canons of the .American Church. As we have seen, General Canon 11 makes a majority of the whole membership a quorum and makes a majority of such quorum competent to act. Thus, the two February, 1956 meetings we are examining had valid quorums and took action by a sufficient majority vote. This without more decides the present lawsuit and calls for an affirmance.
And all this is confirmed by another change made by chapter 720 of the Laws of 1899 which added to the Religious Corporations Law a section 20 (now § 25) which is applicable to all religious groups and states: “ No provision of this act authorizes the calling, settlement, dismissal or removal of a minister, or the fixing or changing of his salary, and a meeting of a church corporation for any such purpose shall be called, held, moderated, conducted, governed and notice of such meeting given and person to preside thereat ascertained and the qualification of voters thereat determined, not as required by any provision of this act but only according to the aforesaid laws and regulations, practice, discipline, rules and usages of the religious denomination or ecclesiastical governing body, if any, with which the church corporation is connected.” Thus, since 1899 we have had a complete exclusion, from any coverage of the Religious Corporations Law and as to any denomination, of the choice or removal of a minister of religion and an acknowledgment by the Legislature that all such questions are for the denomination itself to regulate by its own laws and usages.
*484 We will, however, answer briefly the arguments made by appellants from section 42.
As we have pointed out, the 1895 Religious Corporations Law in its general provisions for vestry quorums (then § 32) called for the presence either of the rector plus one churchwarden plus a majority of the vestrymen or the rector plus both churchwardens and one less than a majority of the vestrymen; if the rector were absent or incapable of acting, then for a quorum there were needed either one churchwarden and a majority of vestrymen or both churchwardens and one less than a majority of vestrymen. To this there were made in 1919 (L. 1919, ch. 267) two changes and it is on appellants’ version of the purpose and meaning of these 1919 changes that they chiefly rely. In that year the Legislature took notice of a situation which could arise (and presumably had arisen) where a rector might refuse to call a meeting. The statute, as it then read, provided that if there be a rector a vestry meeting must be called by him. Furthermore, the quorum requirements of section 42 in that pre-1919 form called for the presence of a rector unless he was necessarily absent though in office. To provide for this situation where a rector held office but refused to call the vestry into session, the section was amended in two respects. First, there was described a new method whereby in the event of a rector’s failure or refusal to issue the call, the clerk might do so on written request by two thirds of the whole vestry. Having thus created a way to call the meeting without the rector’s consent, the Legislature then made it possible legally to hold the vestry meeting without the rector’s participation. This was done by changing to its present wording the second numbered quorum rule in section 42. Appellants say this change means that any vestry meeting of any kind held without the rector’s presence requires for a quorum “ one churchwarden and one more than a majority of the vestrymen or both churchwardens and a majority of the vestrymen ”. Therefore, say appellants, the presence at the February, 1956 meetings of 2 churchwardens and 4 only of the 9 vestrymen was not a quorum. There are two answers to this. As we have seen, the last sentence of section 42, together with section 25, says that as to the calling of a rector, the pertinent quorum provisions are those of the Canon law, and here the Canon law requirements were certainly satisfied. Secondly-—and we *485 have discussed this, too, above — the 1919 changes in section 42 as to quorums were intended to cover only the special circumstance of a rector in office refusing to call or attend a meeting. Such statutory revisions could not have any relevance to the election of a new rector.
We pass on no other questions.
The judgment should be affirmed, with costs.
Chief Judge Conway and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Judgment affirmed.