Argued December 16, 1976, affirmed, costs to respondent January 31,
reconsideration denied March 16, petition for review denied
March 29, 1977

## STATE ex rel GRABHORN, *Respondent,*

*v.*

## GRABHORN, *Appellant.*

### (CA 6652)

559 P2d 923

James T. Marquoit, Portland, argued the cause and filed the brief for appellant.

John J. Higgins, Portland, argued the cause for respondent. With him on the brief were Donald J. Friedman, and Black, Kendall, Tremaine, Boothe & Higgins, Portland.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

FORT, J.

**FORT, J.**

The husband appeals from an order modifying his child support obligation to two of the parties' minor children.

The parties were married in 1959 and divorced in 1967. The children whose support is in question were born in 1962 and 1965. In 1971 the decree was modified to fix child support at $75 per month per child. In 1976 the wife moved to modify the decree to increase the amount of child support. After a hearing at which much evidence was presented, the court ordered that child support be increased to $225 per month per child, and that the husband pay one-half of the daughter's orthodontic expense. In addition the wife was awarded attorney fees and costs. The husband appeals.

The wife testified that her salary had dropped from $11,000 annually at the time of the 1971 modification to $700 per month gross at the time of the hearing, due to a job change, made necessary in order that she could be near her ill parents, which required her to relocate in Portland from Hawaii.

The question presented is whether the evidence received below showed a change in the husband's ability to pay sufficient to warrant the threefold increase in child support.

The evidence offered of the nature and amount of the husband's assets and earnings was conflicting. The husband owns, controls and operates a corporation engaged in the business of salvage and excavation, taxable income from which was entirely under his control. Although he claimed that he could not estimate the present market value of the corporation's equipment, such equipment is carried on its tax return at a cost basis of $93,000, and one witness estimated it had a present value in excess of $200,000. The husband claimed further that he did not know the revenues of the corporation despite the fact he owned

and operated it. However, its 1974-75 tax returns reflected gross sales of $81,000, and a witness who kept the company books testified to $20,000 monthly revenues, the great bulk of which was solely attributable to his personal operation of the equipment. The husband testified that his taxable income was approximately $3,000 in 1974 and $3,500 in 1975, that he had recently acquired a one-third interest in certain real estate, and that he owned a boat, motor, trailer and antique truck. The testimony of other witnesses indicated that he made extensive personal use of certain corporate vehicles and corporate funds.

Evidence was also offered on the issue of the husband's credibility. Such evidence indicated that since the parties' divorce, the husband has at various times and in various ways used his corporate alter ego to conceal assets from respondent wife. Indeed one of appellant's wives subsequent to respondent expressly so testified. Our cases make clear that we will disregard the corporate device when it is used to accomplish fraud or injustice. *Epton v. Moskee Investment Co.,* 180 Or 86, 174 P2d 418 (1946); *Abbott v. Bob's U-Drive,* 222 Or 147, 352 P2d 598, 81 ALR2d 793 (1960); *Palm Gardens, Inc. v. OLCC,* 15 Or App 20, 514 P2d 888 (1973), Sup Ct *review denied* (1974). Accordingly, we conclude that the court in evaluating change of circumstances correctly considered the corporation and its assets. This corporation was not formed until after the original decree and, according to the testimony of appellant's then wife at the time of its formation, was established primarily to enable him to avoid payment of his support obligations.

Resolution of the question of whether a change in circumstances has been shown also clearly requires an assessment of the husband's credibility. It is clear from the court's recitation of certain inconsistencies in his testimony, and from the testimony of other witnesses, that the court did not find his testimony to be

credible. As the Supreme Court stated in *Cain v. Heard,* 274 Or 727, 733, 548 P2d 978 (1976):

"* * * In equity cases this court has been reluctant to substitute its opinion for that of the trial court when the witness' credibility is a deciding factor. We run the risk of drawing incorrect inferences from a lifeless transcript, which is unlike being present in the courtroom during the course of trial.

"In *Martin v. Good,* 234 Or 291, 296, 381 P2d 713 (1963), we said:

"'* * * [W]e are not going to reverse a decree by deciding one witness is to be believed and another witness is not to be believed unless because of peculiar circumstances we are convinced that the trial court's decision in this regard is clearly erroneous.'"

From our examination of the record, we find ample support for the court's decision on his credibility.

■ Finally, we note that the record reveals several orders subsequent to the decree changing or reducing the previous support order. The court in its oral opinion noted many of the apparent inconsistencies in appellant's testimony in his several appearances before it and his failure in prior testimony to mention the corporation, Grabhorn, Inc., or that he worked for it. Since the last hearing in 1971 its tax return for 1975 shows that it had acquired assets beginning in 1972 having a value of $93,000, although it was incorporated July 1, 1968. We conclude that the evidence amply supports the conclusion of the trial court that there had been a substantial change of circumstances since the 1971 order.

Affirmed. Costs to respondent.