711 P.2d 612

**In re the Marriage of Cheryl L. STAND-**
**AGE, Petitioner-Appellee,**

v.

**Keith F. STANDAGE,**
**Respondent-Appellant.**

**No. 1 CA–CIV 7931.**

Court of Appeals of Arizona,
Division 1, Department A.

June 11, 1985.

Reconsideration Denied Sept. 3, 1985.

Robert A. Jensen, P.C. by Robert A. Jensen and Vicki A. Kjos, Phoenix, for petitioner-appellee.

Fogel & Lamber, P.A. by Dennis M. Lamber, Phoenix, for respondent-appellant.

## OPINION

GREER, Judge.

This is an appeal from an amended decree of dissolution of marriage entered on

May 30, 1984. We hold that the trial court erred only in its award of attorney fees, and reverse the decree solely on that issue.

On April 26, 1982, Cheryl Standage filed a petition for dissolution of marriage. The petitioner and her husband, Keith, the respondent, had six children, four of whom were living at home at the time.

The case went to trial in a bifurcated hearing. The property and support portions of the petition were heard in May 1983, and the custody issues went before the trial judge in September of that year. A decree of dissolution was filed on December 16, 1983, after which the husband filed a motion for new trial. Following argument on the motion, and certain additional post-trial issues, an amended decree of dissolution, with amended findings of fact, was filed on May 30, 1984. The husband timely appealed.

Eight separate issues are presented for our determination:

1) Did the court err in piercing the corporate veil of the Stansen Corporation?

2) Did the court err in awarding to appellee half of the "McKellips property," a major asset of the Stansen Corporation?

3) Was the trial court's award of attorney's fees and costs contrary to the Arizona statutory mandate (A.R.S. § 25–324)?

4) Was the trial court's award of spousal maintenance contrary to law?

5) Did the court err in its characterization of certain cash transfers to and from a business associate of the husband?

6) Was the court's finding that certain stock was the sole and separate property of the wife erroneous?

7) Did the court abuse its discretion in the award of child support?

8) Was the court biased against the respondent-husband?

We address the Stansen Corporation issues together, and then address the remaining questions in turn.

## I. PIERCING THE CORPORATE VEIL OF STANSEN CORPORATION

In the amended decree of dissolution, the trial court found that "it is necessary and appropriate for the court in law and equity to pierce the corporate veil of the Stanson Corporation in order to fully and completely protect the interests of Wife therein." The husband concedes that the trial court could properly evaluate the assets of the corporation; however, he contends that the court erred in taking the further step of disposing of these corporate assets without formal dissolution of the corporation. Specifically, he argues that the evidence did not support a finding that the corporation was the "alter ego" of the husband individually, and that justice did not require piercing the corporate veil in order to dispose of the assets. We disagree.

The Stansen Corporation was a real estate development company owned, at the time of the dissolution proceedings, by the husband and wife. Its assets consisted of proceeds received from earlier unrelated litigation, and certain rental property located at 2401 East McKellips Road in Phoenix.

The court also found an additional $95,000 to be an asset of the corporation.[1] In the amended decree, the court awarded one-half of the litigation receipts, plus $68,425 to the wife, and apparently also awarded the McKellips property jointly to each party. The $68,425 consisted of one-half of the $95,000 fund ($47,500), one-half of the proceeds remaining from a July 5, 1983, removal by the husband of a portion of the litigation assets ($12,125), $5,000 as an award to the wife of attorney's fees, and $3,800 to represent the wife's one-half interest in a California condominium.

■■ A basic axiom of corporate law is that a corporation will be treated as a separate entity unless sufficient reason appears to disregard the corporate form e.g.,

---

**1.** This fund is more fully discussed in part IV of our opinion.

**476**

*Dietel v. Day,* 16 Ariz.App. 206, 492 P.2d 455 (1972). As a separate entity, the personal assets of an individual stockholder may not normally be reached to satisfy corporate debts. *Honeywell, Inc. v. Arnold Construction Co., Inc.,* 134 Ariz. 153, 654 P.2d 301 (App.1982). An obvious corollary to that proposition is that assets of a validly formed corporation should be distinct and protected from the debts of individual shareholders. However, where the corporation is shown to be the alter ego or business conduit of a person, and where observing the corporate form would work an injustice, a court may properly "pierce the corporate veil." *Dietel, supra,* 16 Ariz. App. at 208, 492 P.2d 455. This "alter ego" status exists where there is "such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." *Dietel, supra,* at 208, 492 P.2d 455. For purposes of appellate review, the decision of the trial court will be upheld if there is substantial evidence in support of the judgment. *Chapman v. Field,* 124 Ariz. 100, 602 P.2d 481 (1979).

In the present case, the trial court found that the husband was the member of the community responsible for management and operation of the corporation. The court further found that the husband had failed to file corporate income tax returns for 1977 through the time of trial,[2] that he had failed to file the proper Arizona Corporation Commission reports for several years, that he had failed to maintain appropriate books and records, that he had failed to observe corporate formalities, and that he had failed to advise the wife as an equal shareholder of the business decisions and affairs of the corporation.

In our opinion, the evidence sufficiently supported the findings of the trial court. Clearly, there was a unity of interest such that the corporation became the alter ego of the husband as an individual. Further, since the husband and wife were the sole shareholders of the corporation,

and since the corporation's assets constituted a substantial portion of the community property, it is apparent that allowing no disbursement would work an injustice to the wife. The husband argued at trial that he should be awarded all assets of the corporation. Conceivably, the trial court could have awarded the husband all the corporate assets, and equalized the property division by awarding other community property to the wife. However, a trial court is accorded great discretion in the apportionment of community assets. *Neal v. Neal,* 116 Ariz. 590, 570 P.2d 758 (1977). Where, as in this case, the evidence indicates that the wife was not a party to the business decisions, and that the husband was either uncertain or evasive regarding the valuation of the corporate assets, it does not appear to be abuse of discretion to split the assets of the corporation.

Although it is a question of first impression in Arizona, it is not unusual for a domestic relations court to pierce the corporate veil in a dissolution proceeding. *See, e.g., Vallone v. Vallone,* 644 S.W.2d 455 (Tex.1982) (piercing of corporate veil normally left to domestic relations trial court as issue of fact); *State ex rel. Grabhorn v. Grabhorn,* 28 Or.App. 357, 559 P.2d 923 (1977) (trial court's inclusion of corporate assets in valuation of husband's earnings ruled proper); *Lyons v. Lyons,* 340 So.2d 450 (Ala.Civ.App.1976) (trial court's piercing of corporate veil to award corporate assets to parties in dissolution upheld). Granted, the present case is distinguishable from other decisions in that the corporation was, for all intents and purposes, dissolved by the decree. Potentially, such an action could prevent creditors of the corporation from being paid. We note here, however, that the husband testified that the Internal Revenue Service was the only creditor of the corporation. We further observe that the trial court made specific provisions for corporate liabilities; regarding not only tax deficiencies, maintenance costs, and ex-

**2.** As a result of the failure to file corporate tax returns, the court found that the parties faced a "risk of substantial tax liability." This finding is addressed in more detail in part III of our opinion.

penses that may arise regarding the McKellips property, but any unknown liabilities that might arise.

The possibility of defrauding creditors of the corporation should disincline a trial court to award corporate assets to individual parties in a dissolution proceeding. However, where the evidence indicates that all creditors are provided for, and that an injustice will otherwise result, the action is not erroneous. We therefore affirm the conclusion of the trial court in this regard.

## II. AWARD OF ATTORNEY FEES

■ As indicated above, the court awarded $5,000 of the corporate assets to the wife for attorney's fees and costs. The court found:

> [A]lthough Wife has sufficient property to be able to pay her own attorney's fees and costs, the Husband has specifically prolonged this proceeding and greatly increased its legal cost as a result of the evasive, unresponsive and obstructive manner in which he has conducted himself in testimony at depositions and at trial. The Respondent's testimony at times exceeded evasion and amounted in this Court's view to misrepresentation.

The husband contends that the award was erroneous inasmuch as it was based "solely on grounds evidencing malice," and that, in any event, the award was improper under Arizona statutes.

Arizona Revised Statutes, § 25–324 states, in part:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount to the other party for costs and expenses of maintaining or defending any proceeding under this chapter. For the purposes of this section costs and expenses may include attorney's fees, deposition costs and such other reasonable expenses as the court finds nec-

essary to the full and proper presentation of the action, including any appeal.

A.R.S. § 25–324. While the award of attorney's fees in a dissolution action is left to the sound discretion of the trial court, *e.g., Ferrer v. Ferrer,* 138 Ariz. 138, 673 P.2d 336 (App.1983), the exercise of that discretion is limited by the considerations mandated by the statute. We have held that A.R.S. § 25–324 is designed to ensure that the poorer party in a litigation has the proper means to litigate the action. *Countryman v. Countryman,* 135 Ariz. 110, 659 P.2d 663 (App.1983). In the present case the trial court found that the wife was capable of paying her own legal expenses. Nevertheless, the court made an award of attorney fees, apparently as a sanction for the manner in which the husband conducted himself prior to and during trial.

The wife contended that such a sanction is proper under the authority of a decision by division two of this court, *Kosidlo v. Kosidlo,* 125 Ariz. 32, 607 P.2d 15 (App. 1979); modified 125 Ariz. 18, 607 P.2d 1 (1979), in which an award of attorney's fees was made in order to compensate a spouse for the costs arising from a search for concealed assets. A similar conclusion was reached by our supreme court in *Mori v. Mori,* 124 Ariz. 193, 603 P.2d 85 (1979). In that case, the court also upheld the trial court's award of attorney's fees where the record indicated the incursion of substantial costs due to the need to locate concealed assets. Both of those cases are distinguishable, however, in that there is no mention of a finding by the trial court that the recipient of the award was financially capable of paying the fees. Furthermore, in *Kosidlo,* the parties had stipulated prior to the award that such a determination would be proper *if the court first decided that an award was appropriate.*[3]

■ We believe the statutory directive is clear. The sole consideration for the

---

3. We note that a recent decision of this court, *Thomas v. Thomas,* 142 Ariz. 386, 690 P.2d 105 (App.1984), upheld an award of attorney's fees where the evidence indicated a distinct lack of cooperation by the spouse against whom the

award was made. In *Thomas,* however, the trial court also based its finding upon a disparity of income and earning capacity, and did not find, as here, that the parties were equally able to pay.

awarding of attorney's fees is the "financial resources" of the parties. The wife, having been found to be financially able to pay her own attorney's fees, is unable to meet the statutory prerequisite. Admittedly, the obstreperous litigant should in some manner pay for his conduct, but not pursuant to A.R.S. § 25–324.

We therefore reverse that portion of the amended decree of dissolution awarding the wife $5,000 in attorney fees and costs.

### III. AWARD OF SPOUSAL MAINTENANCE

The court made an order of spousal maintenance as follows:

> That it is appropriate that Wife receive spousal maintenance from Husband in the amount of $1 per month for a period of four years or until remarriage, or until further order of the Court, whichever first occurs; that such an award of nominal maintenance is appropriate to enable the Court to retain jurisdiction, in light of the foreseeable encumbrance or diminution of Wife's property by tax liability . . .

The husband contends that the award is erroneous, arguing that the evidence clearly shows that the wife has sufficient property to provide for her needs, and that such an award is contrary to the decision of our supreme court in *Neal v. Neal*, 116 Ariz. 590, 570 P.2d 758 (1977).

As the husband correctly asserts, any award of spousal maintenance must be in accordance with the statutory directive set forth in A.R.S. § 25–319. The statute states:

> In a proceeding for dissolution or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
> 1. Lacks sufficient property, including property apportioned to such spouse, to provide for his or her reasonable needs; and

> 2. Is unable to support himself or herself through appropriate employment or is the custodian of a child whose age or condition is such that the custodian should not be required to seek employment outside the home or lacks earning ability in the labor market adequate to support himself or herself.

A.R.S. § 25–319(A).

In the present case, the court found that the wife was unable to support herself through appropriate employment at the present time. The court also found, however, that the wife presently has sufficient property, including that apportioned in the decree, to provide for her reasonable needs. Given those findings, the issue before us is whether the order contravenes our supreme court's decision in *Neal*.

In *Neal*, the supreme court, in dictum, discussed and discouraged the practice of a nominal award of spousal maintenance. The court stated:

> Any attempt to avoid the total severance of the marital bonds through the device of unjustified nominal spousal maintenance, enabling a party to later return for a greater award in the event of some unforeseen circumstance, can only be viewed as an evasion of the clear legislative mandate of A.R.S. § 25–319. It is the court's duty to give effect to the statutes of Arizona, not to circumvent them.

116 Ariz. at 593, 570 P.2d 758. The court also noted that "it would indeed be a rare situation" where an award of one dollar would satisfy the requisite finding of necessity under the statute. 116 Ariz. at 592, 570 P.2d 758.

The court in the present case made the nominal spousal maintenance award in view of the potential tax liabilities of the parties. This potential liability exists because of the husband's failure to file tax returns for the Stansen Corporation from 1977 through the time of trial. Both the cause and foreseeable consequences of the tax situation were the subject of detailed

testimony, both by the husband and an accountant for the Stansen Corporation. Each testified that severe financial obligations could be incurred, and that individual assets of both the husband and wife could be subject to liability. Given that testimony, it is apparent that the potential tax liability is not an "unforeseen circumstance" as postulated in *Neal*, but rather is a reasonable consequence of the husband's inaction.

An award of spousal maintenance will be affirmed if any reasonable evidence exists to support the judgment of the trial court. *Nelson v. Nelson*, 114 Ariz. 369, 560 P.2d 1276 (App.1977). Where foreseeable circumstances exist that could fundamentally alter the ability of a spouse to provide for his or her reasonable needs, a nominal award of spousal maintenance is not improper, and does not conflict with either the statutory mandate or the *Neal* decision.

We find no abuse of discretion.

## IV. THE "LOAN" FROM IVORY CROW TO STANSEN CORPORATION

The husband contends that the trial court erred in finding that certain money received by him from a business associate was not a loan but was, in fact, an asset of the Stansen Corporation. He argues that the money was actually loaned to him in his individual capacity, out of funds that were loaned originally to the business associate—Ivory Crow—from another associate, Wayne Crismon. The respondent does not dispute that he himself made the original transfer to Crow; nor does he deny that the funds were drawn from a Stansen Corporation account. He asserts, however, that the funds transferred to Crow from the Stansen account were actually being held by the corporation on behalf of Wayne Crismon.

The wife responds that the trial court's characterization of the transaction is fully supported by the evidence, and that the resulting disposition of the assets was entirely correct. We agree with the wife.

On this issue, the trial court found as follows:

The Court further finds that Husband has not been candid with the Court and that he failed to disclose, except upon cross-examination, certain critical facts concerning the alleged "loan" from Ivory Crow to the Stansen Corporation. The Court finds that upon the available evidence, Husband, acting on behalf of the Stansen Corporation, transferred from its accounts, $200,000 in the form of cashier's checks which were then given to the witness Ivory Crow, who cashed the same. Thereafter, from time to time, Ivory Crow would "loan" back to Husband the said $200,000, or portion thereof, which loans Husband claimed as obligations of the Stansen Corporation. Upon the credible evidence, the Court finds that as between the parties, all monies from above-mentioned $200,000 in cashier's check which have not been returned by Ivory Crow to the Stansen Corporation are the property of the Stansen Corporation. The Court further finds that upon the available evidence, as between the parties, the Stansen Corporation is not indebted to Ivory Crow in the sum of $105,000 or any other sum as alleged by Husband in the course of his deposition and in portions of his trial testimony on the first and second days of trial.

Based upon the conflicting testimony of the husband, the equivocal nature of Crow's testimony, the non-existence of documentary evidence, and the unavailability of Crismon, we find the evidence supports the trial court's finding. Granted, the trial court had to disregard testimony by Crow and the husband that the money was owed to Crismon. However, determinations of witness credibility are peculiarly within the province of the trier of fact. *Brevick v. Brevick*, 129 Ariz. 51, 628 P.2d 599 (App. 1981). Where the trial court has assessed a witness's credibility, the court of appeals will normally defer to that decision. *Matter of Appeal in Pima County, Juvenile*

*Action No. S–139,* 27 Ariz.App. 424, 555 P.2d 892 (1976).

As a final indication of the correctness of the court's conclusion, we refer to a statement made during trial by counsel for the respondent:

> Let me go back to the $200,000. That's the only single transaction which is, assuming for the sake of argument, the Judge is correct, that it was an improper moving of funds. Let's assume that at this point. When does it occur? It occurs sometime prior to—not substantially, but prior to the institution of the divorce. It's possible Your Honor could conclude from that that the man was taking and protecting himself in contemplation of what he expected would happen, which had reached that point in March and April of 1982. But that is still the only single transaction that ever occurred. It is not an unheard of response in the male animal, although, I don't justify it. If you reach that conclusion, what I say to you, Judge, it's behind us. You have taken those steps, and you have done what you had to do.

In short, we find no abuse of discretion in the trial court's conclusion that the money allegedly received from Crow as a loan was actually an asset of the Stansen Corporation.

## V. CHARACTERIZATION OF THE PLANNED INVESTMENT CORPORATION STOCK

During trial, and in pre and post-trial proceedings, one of the most hotly contested assets of the parties concerned the stock in Planned Investment Corporation, owned by the wife's father (52% ownership), her brother (24% ownership), and the wife individually (24% ownership). The issue was made more complex by virtue of the fact that the husband was apparently not only the manager, but the driving force behind the corporation in Arizona. The trial court found that the wife's 24% share was a gift to the wife, and was sole and separate property not subject to a community claim. The court also found that the husband had failed to prove that community efforts had increased the value of the stock. The husband contends that the court erred in finding the stock was a gift to the wife, and further asserts that sufficient evidence existed to show the extent to which community efforts improved the value of the stock.

■ In support of his argument, the respondent cites the long accepted rule that property acquired by either spouse during marriage is presumed to be community property, and that the presumption may be overcome only by clear and convincing evidence. *E.g., Cockrill v. Cockrill,* 124 Ariz. 50, 601 P.2d 1334 (1979). The wife accepts this general principle, but refers to other decisions that indicated the presumption does not arise if acquisition is by gift. *E.g., Evans v. Evans,* 79 Ariz. 284, 288 P.2d 775 (1955). Without deciding whether a gift acquired during coverture is subject to the community property presumption, we find that the evidence in this case was sufficient to overcome any presumption of community property.

In the present case, the court heard testimony from the wife that 24% of ownership in the corporation was given to her individually as a gift from her father. She further testified that an identical gift was made to her brother, and produced a stock certificate made to her individually which supported her testimony. The husband, in contrast, testified that it was his impression that the stock was given to the community. He further stated that he had been the moving force in the corporation from the time of its inception. His activities involved everything from initial investment planning, to overseeing construction projects. He admitted, however, that he was paid a fair salary for work done in connection with the corporation. Specifically, this included a monthly management fee, and standard real estate commissions on property sales.

As stated above, the trial court found that the corporation stock was the sole and separate property of the wife. In reaching this conclusion, the court also found that

the husband was adequately reimbursed for his services to the corporation.

We agree with the findings of the trial court. The essential elements of a gift are donative intent, delivery, and a vesting of title upon such delivery. *Neely v. Neely*, 115 Ariz. 47, 563 P.2d 302 (App. 1977). Here, the wife's testimony, although contradicted by the husband, was to the effect that the corporate stock was a gift to her individually. This testimony was supported by the stock certificate, and a similar certificate to her brother. Upon a review of a trial court's decision designating property as community or separate, we view all evidence and reasonable inferences therefrom in a light most favorable to supporting the decision. *Sommerfield v. Sommerfield*, 121 Ariz. 575, 592 P.2d 771 (1979). As to the fact that the testimony was not uncontradicted, it is well settled that the trier of fact determines the weight to give conflicting evidence; such questions are not properly for the reviewing court. *United California Bank v. Prudential Insurance Co.*, 140 Ariz. 238, 681 P.2d 390 (App.1983). Finally, we do not agree with the husband's contention that *Holby v. Holby*, 131 Ariz. 113, 638 P.2d 1359 (App.1981), is applicable to the case at bar. *Holby* is clearly distinguishable in that the court found that the alleged "gift" was a renumeration for services rendered and not a true gift. That situation is not applicable to this case.

We also reject the husband's contention that he adequately proved that community labor increased the value of the stock. In *Cockrill, supra,* our supreme court held:

[W]hen the value of separate property is increased the burden is upon the spouse who contends that the increase is also separate property to prove that the increase is the result of the inherent value of the property itself and is not the product of the work effort of the community.

124 Ariz. at 52, 601 P.2d 1334. The court's holding is clear in that a prerequisite to proving sole and separate property is the submission of evidence regarding the increase in value of such property. As indicated, the trial court found that the husband had failed to prove the value of the stock, either at the time of acquisition or at the time of dissolution.

We are not persuaded by the husband's argument that evidence of his sole corporate management is sufficient proof of valuation. Upon review, this court will not set aside a trial court's factual finding unless it is clearly erroneous. *K & K Manufacturing, Inc. v. Union Bank*, 129 Ariz. 7, 628 P.2d 44 (App.1981). We decline to reverse the trial court's conclusion.

## VI. AWARD OF CHILD SUPPORT

The husband's next argument is that the court abused its discretion in its order of child support. He contends that the award of $300 per month/per child is grossly excessive, and that the order does not properly take into account the relative financial capabilities of the parties.

Under A.R.S. § 25–320, a court is allowed discretion to award child support, upon the consideration of all relevant factors, including the financial resources of the custodial parent, and "excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of [community property] ..." A.R.S. § 25–320.

The husband is correct in his assertion that—of both parties—the wife has apparently been awarded property and assets with a greater cash flow potential. He ignores, however, evidence indicating that the wife has incurred substantial litigation expenses, due apparently in part to his own intransigence. In addition, his argument fails to take into account the findings of the trial court, in other portions of the decree, of possible concealment and fraudulent disposition of assets. Further, the record belies the husband's contentions of lack of access to cash assets. Finally, although the husband's own testimony referred to support requirements in an amount considerably less than the amount awarded by the trial court, other evidence presented fully supported the trial court's order.

Where reasonable evidence exists to support an award of child support, this court will not reverse. *Tester v. Tester*, 123 Ariz. 41, 597 P.2d 194 (App.1979). Further, the trial court is granted broad discretion in determining the proper amount to be awarded. *Brevick v. Brevick*, 129 Ariz. 51, 628 P.2d 599 (App.1981). We find no error.

## VII. BIAS AND PREJUDICE OF TRIAL JUDGE

Finally, the appellant contends the alleged errors in the decree of dissolution indicate that the trial judge was biased against him. He further asserts that alleged irregularities in the filing of the judgment are indicative of this bias. We disagree.

Late in the second phase of the bifurcated hearing, the husband made comments to the effect that Judge Noel A. Fidel, then hearing the matter, was biased in favor of the wife. Judge Fidel immediately ordered that a hearing be held before presiding Judge Robert C. Broomfield. Judge Broomfield observed that such an action would normally be undertaken pursuant to Rule 42, Arizona Rules of Civil Procedure, in which a motion, supported by affidavit, would be filed for a change of judge. The trial was, at that time, almost entirely concluded, however, and so the hearing proceeded on the order of a Rule 59 motion for a new trial. Judge Broomfield heard statements from counsel for both husband and wife, and conferred with Judge Fidel. At the close of the hearing, counsel for the husband met with his client and requested that the trial be concluded before Judge Fidel. The issue was again raised in the respondent's motion for new trial at the close of the proceedings. That portion of the motion was denied.

We conclude that the court did not err in denying that portion of the motion for new trial. As a general rule, this court will not upset a trial court's decision to deny a motion for new trial absent a showing of a clear abuse of discretion. *Suciu v. Amfac Distributing Corp.*, 138 Ariz.

514, 675 P.2d 1333 (App.1983). Here the issue was considered at length, not only by Judge Fidel, but by Judge Broomfield. Both concluded that no prejudice existed. In *Rademacher v. City of Phoenix*, 442 F.Supp. 27 (D.Ariz.1977), the district court referred to the need to strictly construe disqualification rules, in order "to safeguard the judiciary from frivolous attacks upon its dignity and integrity ... and to prevent abuse and to insure orderly functioning of the judicial system." 442 F.Supp. at 29. These same considerations should apply in reviewing—on appeal—an allegation of bias and prejudice. Absent a more definite indication that respondent was, in some way, denied a fair trial, we will not reverse.

## CONCLUSION

The award of the attorney's fees to the wife is hereby reversed. In all other respects, the judgment is affirmed.

BROOKS, P.J., and JACOBSON, J., concur.