OPINION OF THE COURT
Edward J. Greenfield, J.
In this action under article 7-A of the Executive Law to *792 enjoin the unregistered solicitation of charitable contributions, the Attorney-General moves for a preliminary injunction to prohibit defendants New York Foundation for the Homeless, Inc. and Jerome Mackey from such solicitation unless they have complied with all applicable registration and reporting requirements. Defendants cross-move for a jury trial and for consolidation of this action with the proceeding entitled Abrams v Temple of the Lost Sheep (148 Misc 2d 825), in which the Attorney-General moved to compel compliance with subpoenas previously issued by his office. The ruling of the court decided simultaneously herewith directing compliance and denying all cross motions makes it unnecessary to consider consolidation.
Defendant, New York Foundation for the Homeless, Inc. (the Foundation), is a not-for-profit charitable institution incorporated in New York State in 1988. Defendant Jerome Mackey is the incorporator and one of the three directors of the Foundation, as well as chief executive officer of the Temple of the Lost Sheep, Inc. (Temple), also known as Action Committee to Help the Homeless Now. The Foundation offices, the shelter for the homeless operated by the Temple, and Mackey’s residence are all located at 131-57 Fowler Avenue, Flushing, New York.
The Foundation purports to help the homeless, but in October 1988, in response to allegations of wrongdoing concerning Temple practices by former residents of the shelter, the Attorney-General issued investigation subpoenas, with which the court has directed compliance.
In this case, the defendant entity is not the Temple, but the Foundation, which the Attorney-General contends must register with the Secretary of State. Section 172 of the Executive Law provides: "(1) [ejvery charitable organization, except as otherwise provided in section one hundred seventy two-a [religious agencies and organizations are there exempted] * * * which intends to solicit contributions from persons in this state or from any governmental agency by any means whatsoever shall, prior to any solicitation, file with the secretary upon forms prescribed by it the following information:”.
The Secretary of State has certified that the Foundation is not registered with the Office of Charities Registration as required by section 172. Nevertheless, the Attorney-General charges, the Foundation has solicited contributions.
The supporting affidavits indicate that defendant Mackey, *793 whose Temple of the Lost Sheep, Inc. operates a shelter for the homeless in Queens, sends the residents of its shelter out on the streets with portable tables, empty water cooler bottles and literature to help the homeless. Residents report collecting $80 to $200 a day and one stationed in front of Blooming-dales allegedly makes $300 to $400 a day. Those soliciting collections are told they can keep 25% of the amount collected, but, in fact, they take whatever they are given. It is alleged that the shelter provided is "minimally adequate”, with the homeless living in the cellar or the living room, with the rest of the three-story house occupied by Mr. Mackey. The same solicitation methods are used on behalf of the Foundation, which is located at the same address as the Temple. In addition to injunctive relief, the Attorney-General seeks an accounting for all funds collected and a declaration that such funds should be held in trust for charitable purposes.
In the proceeding relating to the Attorney-General’s issuance of subpoenas to the Temple, counsel James Roberson, Jr., represented that the Foundation would, indeed, register and file annual reports with the Attorney-General. However, in this case counsel contends that the Foundation, as it is affiliated with the Temple, a bona fide religious organization, is exempt from the requirements of registration. He argues that two former residents of the shelter, who were told to shape up or ship out, conspired to get even with Mackey who had enforced the shelter rules against them. It is contended that "they told their lies” to the Daily News, and to its reporter, Jack Newfield, who joined in the conspiracy to deny Mackey and the Temple freedom of religion. As part of the conspiracy, it is charged, Newfield was to write a series of newspaper articles designed to create a public outcry against the Temple and Mackey and to inspire a bogus investigation in which the activities would be falsely characterized as "charitable” rather than "religious.” Defendants contend that they run "the finest shelter of its kind for homeless men in the City of New York.” In an attempt to forestall these proceedings, the Temple and Mackey commenced a Federal lawsuit against the Attorney-General, Newfield and the Daily News, but the United States District Court has denied injunctive relief, stayed the action and deferred the issues to the State Supreme Court.
Although religious organizations may be exempt from the initial filing requirements of section 172 of the Executive Law, they may nevertheless be investigated if there is a question as to the propriety of their solicitation of funds. (See decision of *794 this court on quashing of subpoenas, Matter of Abrams v Temple of the Lost Sheep, 148 Misc 2d 825, supra.) The Foundation, however, is not a religious organization. Although it may be affiliated with the Temple, its activities in fund raising and in providing shelter to the homeless are clearly secular and not religious activity. In the subpoena proceeding, counsel stated that the intention was for the Foundation to be an autonomous organization. There is a clear-cut distinction between work which is charitable and work which is religious, although both may spring from common motives. The flyer of the Foundation which is used in connection with the solicitation of funds refers only to mundane and secular activity, and makes no reference to religious affiliations. If exemption is sought from the statutory registration and filing requirements, any organization claiming exempt status is required to write to the Office of Charities Registration describing the type of organization and the method of solicitation so that an opinion may issue as to its status. (19 NYCRR part 800.) There is no indication that the Foundation, even if claiming exemption, ever complied with these directives.
Whether the facts alleged by the informants are lies by disgruntled persons and the stories reported in the Daily News are true or untrue need not be determined at this time. It is plain that on the facts as presented, the Foundation is required to file for registration giving the requisite information, and upon a failure to do so it can be enjoined from further solicitation under article 7-A of the Executive Law. The Foundation was not qualified for exemption under section 172-a. The question of adequacy of living facilities, the lack of counseling services, the propriety of solicitation practices and the alleged diversion of funds to Mackey’s private use, are matters which can be dealt with hereafter.
At a time when there is acute sensitivity to the plight of the homeless, the public, the press and the courts must be acutely aware of the possibility that the unscrupulous might prey on the warmheartedness and generosity of the community, and attempt to profit from human misery. At the very least, when such allegations exist and have some degree of evidentiary support, we cannot close our eyes to the possibilities of abuse. The mere fact that a charitable group claims First Amendment privileges cannot shield that group from the scrutiny of the Attorney-General. (Ohio Civ. Rights Commn. v Dayton Schools, 477 US 619 [1986].) The Attorney-General is clearly *795 empowered to supervise charitable corporations and to enjoin them from soliciting funds improperly (EPTL 8-1.4).
There being a demonstrated likelihood of a continuing wrong to the general public, the issuance of a preliminary injunction against solicitation by the defendants is warranted.
Finally, defendant’s motion for a jury trial is denied. As stated by the Attorney-General, the statutes upon which these proceedings lie: the motion to compel and the action to require registration, do not provide for a jury trial. The statutes cited by defendants, Business Corporation Law § 109 (a) and CPLR 4102 (a), are inapplicable.
Accordingly, the Attorney-General’s motion for a preliminary injunction is granted. The cross motion by defendants to consolidate and the demand by defendant for a jury trial is denied.