OPINION OF THE COURT
Edward J. Greenfield, J.
Petitioner, the Attorney-General of the State of New York, issued subpoenas to respondents, The Temple of the Lost Sheep, Inc. and Jerome Mackey, in connection with an investigation being conducted by the Attorney-General to determine whether a proceeding or action should be instituted against them under Executive Law articles 5, 6 and 7-A, Business Corporation Law article 11, General Business Law article 22-A, EPTL article 8, and Not-For-Profit Corporation Law articles 1 and 7. The subpoenas direct the respondents to appear and produce the books and records of the Temple, leases and deeds on its property, minutes of its governing body and the names and addresses of all directors, officers and trustees together with copies of all materials used to solicit money. Another subpoena was issued to TRW, Inc. a credit reporting agency, to produce all credit reports on Jerome Mackey or his aliases. The attorney for the respondents, on reviewing the subpoenas, advised his clients not to appear, claiming issuance of the subpoenas was unauthorized and violative of respondents’ religious rights and their rights against self-incrimination.
*827 The Temple and Mackey then commenced a lawsuit in the United States District Court for the Eastern District of New York against Robert Abrams, both individually and in his capacity as Attorney-General, the Daily News and its reporter Jack Newfield, and former members of the Temple. As plaintiffs in the Federal action they allege, in essence, that the defendants conspired to deprive them of their Federal rights, equal protection and freedom of religion, and engaged in a conspiracy to assert State control over Mackey’s and the Temple’s activities solely because of their religious beliefs.
Mackey claimed that he has been on a "hit list” of the Attorney-General, who has embarked on a conspiracy of harassment against him. He has been investigated concerning his operation of self-defense schools (see, decision of this court in Judo Inc. v Delaney, 42 Misc 2d 504 [1964]; United States v Corr, 543 F2d 1042), and charged with mail fraud in connection with stereo tape distributing. (United States v Mackey, US Dist Ct, ED NY, 1975, 75 CR 468.) He has been held in contempt by the Appellate Division, First Department. In 1979, Mackey helped incorporate The Temple of the Lost Sheep for religious worship and prayer in accordance with the teachings of its founder and spiritual leader, the Reverend Mother Edith Nelson Mackey, his late mother. The reporter, Jack Newfield, and the Daily News were charged by Mackey with joining in a conspiracy with the Attorney-General against him by running a series of critical articles about the Temple to create a basis for investigation.
In the District Court, Judge Raggi, in a decision dated June 7, 1989 (CV88-3675) found that the State proceedings involved an important State interest — the investigation and exposure of possible fraud under the guise of charitable activity. She further found that the State court could properly address the constitutional claims of respondents with respect to privacy, free association, freedom of religion and the right against self-incrimination. Judge Raggi further found the allegations insufficient to support a claim of collusion between the Attorney-General and the Daily News. The Federal action was therefore stayed pending the outcome of the State court proceedings. She denied the application of Mackey and the Temple seeking to enjoin the Attorney-General from proceeding with further investigations, and the request to direct the Daily News to print a retraction of an alleged libelous article.
The Attorney-General has brought this proceeding in the *828 State court to compel respondents to comply with the investigation subpoenas. The respondents have cross-moved to dismiss the Attorney-General’s motion, to quash the subpoenas, and to stay further action or investigation by the Attorney-General on the ground that there is an action pending in the Federal District Court.
In this proceeding, the Attorney-General states that the reason for the issuance of the subpoena upon Mackey is to investigate complaints of fraud and misappropriation of funds that were made against Mackey and the Temple, which operates a shelter for homeless persons in Queens. These complaints, according to the Attorney-General, were that members of the Temple who were also residents of the shelter, were compelled to panhandle for the Temple’s benefit in exchange for bed and board at the shelter and 25% of the moneys collected. Further, the informants allege that most of the moneys collected by the residents have been appropriated by Mackey for his own personal use. The complainants also assert that the moneys collected by them were turned in at the shelter at the end of each day and could not be counted by them prior to their receiving their share, and that they believe they were regularly shortchanged by Mackey, often receiving less than the 25% they were promised.
In opposition to the motion of the Attorney-General and in support of the cross motion by Mackey and the Temple, respondents submit the complaint and amended complaint in the Federal action together with a short affirmation of counsel for the Temple. In addition, respondents submit two affidavits of present members of the Temple who not only attack the character of the two former members of the Temple who have occasioned the Attorney-General’s investigation, but also detail certain conversations with those two former members to support respondents’ allegations of a conspiracy between the Attorney-General and the Daily News to either shut down the shelter, or in the alternative, to take over the shelter from Mackey and operate it as a city-run facility.
It is well settled that one who challenges a subpoena issued by the Attorney-General, which is presumptively valid, has the burden of proof to establish the invalidity of the subpoena (see, Matter of Edge Ho Holding Corp. v Higgins, 256 NY 374) and both Mackey and the Temple have failed to sustain that burden.
There is no doubt that the Attorney-General has a right to *829 conduct investigations to determine if charitable solicitations are free from fraud and whether charitable assets are being properly used for the benefit of intended beneficiaries. This authority is granted to the Attorney-General pursuant to the various articles of the Not-For-Profit Corporation Law and the Estates, Powers and Trusts Law identified in the challenged subpoena here. It is also clear that religious corporations, such as the Temple, are subject to the provisions of the Not-For-Profit Corporation Law. (See, Religious Corporations Law § 2-b [1].) Religious corporations, while not required to register with, and report annually to the office of the Attorney-General (EPTL 8-1.4 [b] [3]), are still within the Attorney-General’s subpoena power, and investigations by the Attorney-General of alleged fraudulent behavior may proceed based upon law and the public interest against fraudulent solicitations by so-called religious groups. The investigation by the Attorney-General herein is "designed to serve those interests without unnecessarily interfering with First Amendment freedoms.” (Schaumburg v Citizens for Better Envt., 444 US 620, 637.) It should be stressed that the investigation does not prevent Mackey or the Temple from practicing their religious activity, nor is it disruptive to such activity.
It is not the function of the court at this stage to weigh the credibility of the complaints made by the former members of the Temple as against the affidavits of the two present members of the Temple which question their character and motives. After reviewing the complaints of Mackey and the Temple in the District Court action and the papers submitted by them in this proceeding, this court finds no basis for concluding that the Attorney-General is acting in bad faith in pursuit of his investigation of either Mackey or the Temple.
The blanket objection by Mackey and the Temple that compliance with the subpoena would deprive them of their Fifth Amendment right to be free from self-incrimination has no merit. Neither the Temple nor its officers have any Fifth Amendment rights against the production of corporate records pursuant to lawful judicial order (Oklahoma Press Publ. Co. v Walling, 327 US 186). Moreover, with respect to respondents’ Fourth Amendment rights involving both State and Federal constitutional safeguards against unlawful searches and seizure, all that is required is that the subpoenaed materials be relevant to the investigation being conducted and that the subpoena not be overbroad or unreasonably burdensome. *830 (Matter of Far Rockaway Nursing Home v Hynes, 44 NY2d 383.)
Therefore, the subpoenas will not be quashed, as it appears that the documents sought are neither overly broad nor burdensome, nor are they utterly irrelevant to a proper inquiry. Neither does it appear at this point that it would be futile to expect the subpoenas to uncover anything within the legitimate scope of investigation. (Matter of La Belle Creole Intl. v Attorney-General of State of N. Y., 10 NY2d 192.)
Respondents must therefore come forth, produce the documents and testify. To sustain a right to assert a Fifth Amendment privilege on the inquiry, it need only be evident from the implications of the question in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. (Hoffman v United States, 341 US 479.)
With respect to that part of the cross motion for an order to stay and enjoin the Attorney-General from continuing with the investigation upon the ground that there is another and prior action pending between the same parties in the Federal District Court, this court finds that the District Court has deferred to this court to determine the various issues raised by Mackey and the Temple. Therefore, it is not necessary for this court to discuss and determine the overlapping of the two actions and whether the resolution of the Federal action will be dispositive of this proceeding to compel compliance with the subpoena (see, Gallo v Mayer, 50 Misc 2d 385, affd 26 AD2d 773).
Accordingly, that part of the motion by the Attorney-General to compel Mackey’s compliance with the investigative subpoena is granted and that branch of the Attorney-General’s motion directing TRW to comply with the subpoena served or to be served upon TRW is also granted pursuant to General Business Law § 380-b (a) (1) without opposition by Mackey. The cross motion of Mackey and the Temple is denied in all respects and they are directed to comply with the subpoenas heretofore issued, within 30 days from the service of this decision and order with notice of entry.