OPINION OF THE COURT
Arthur M. Diamond, J.
*269 The defendant husband moves for an order granting pendente lite relief ordering: (1) defendant’s exclusive use and occupancy of the marital residence; (2) ordering the plaintiff to share equally in all carrying charges on the parties’ house in San Jose, California; (3) ordering the plaintiff to accept a counteroffer on the California property or that a receiver be appointed to sell same forthwith; (4) permitting defendant leave to apply for such interim counsel fees pretrial as may be warranted; (5) awarding a protective order against plaintiff preventing her from attempting to evaluate the Grace Christian Church; (6) ordering the plaintiff to serve a verified complaint on counsel for the defendant or that her action be dismissed; (7) ordering that a proper acceptable plaintiffs statement of net worth be served on counsel for defendant; and (8) granting such other and further relief as this court may deem just and proper.
The plaintiff cross-moves for an order: (1) directing an accounting of all bank accounts and/or entities from which the defendant derives any financial benefit, with the defendant to pay 100% of any and all expert fees and other costs necessitated by such an accounting; (2) directing that the parties’ house located in San Jose, California, be sold and that sales proceeds be ordered held in escrow by plaintiffs attorney; (3) directing the defendant to serve an amended statement of net worth disclosing the defendant’s interest in the Grace Christian Church, the real estate upon which it is situated, and the catering hall rental business operated on its premises, as well as the income and financial benefits derived therefrom; (4) directing the defendant to comply with the plaintiffs demand for discovery and inspection as served upon the defendant on or about February 3, 2007; (5) directing the appointment of an appropriate expert, paid for by the defendant, to establish the value for equitable distribution purposes of the defendant’s enhanced earning capacity arising from his Master’s degree in public health obtained during the marriage; (6) directing the appointment of an appropriate expert, paid for by the defendant, to establish the value of the defendant’s Ph.D. in ministry obtained during the marriage; (7) awarding the plaintiff $20,000 in interim counsel fees; and (8) denying the defendant’s motion as brought on by order to show cause in all respects.
The parties were married for 31 years, have three issue of the marriage, and one child is deceased. The plaintiff filed for divorce on January 18, 2007 by serving the defendant with a summons with notice and filing it with this court. The defendant alleges that he has yet to be served with a verified *270 complaint and seeks an order directing the plaintiff to serve him with such complaint. This branch of the defendant’s motion is denied as moot pursuant to an affirmation of service submitted by counsel for the plaintiff, which affirms that the defendant was served a verified complaint on July 18, 2007.
The defendant also alleges that the parties own a house in California and a house in Guyana. The defendant purchased two additional homes in his name during the marriage, one in Baldwin, New York, in 2001 and one in Queens, New York, in 2003. However, the defendant claims that the homes are not marital property as they both belong to the parties’ son. The defendant states that the Baldwin home was purchased with settlement money given to the son who was seriously injured in a car accident in which another son of the parties was killed. The defendant claims that the second home in Queens was purchased with both the settlement money and equity from the refinancing of the Baldwin home.
The defendant currently resides in the Baldwin, New York, home which became the marital residence in 2001. The plaintiff moved out of the home in January 2007 and established residence elsewhere when she commenced this action. The parties’ son resides in the Queens, New York, home with his wife and pays all of the carrying charges. The defendant alleges that the parties’ son claims that both the Baldwin and Queens homes are his own separate property.
Based on the foregoing, the court determines as follows:
It is well settled that pendente lite awards are designed to ensure that a needy spouse is provided with funds for his or her support and reasonable needs. (Pascale v Pascale, 226 AD2d 439 [2d Dept 1996].) Moreover, the court is to consider the standard of living established during the marriage. (See Hartog v Hartog, 85 NY2d 36 [1995].)
The branch of defendant’s motion seeking exclusive use and occupancy of the marital residence is granted during the pendency of this action as the plaintiff has voluntarily chosen to establish an alternative residence in the state of Florida, and does not contest the defendant’s request for exclusive use and occupancy of the home in her cross motion. (Preston v Preston, 147 AD2d 464, 465 [2d Dept 1989]; Tillinger v Tillinger, 141 AD2d 535 [2d Dept 1988]; see also Kristiansen v Kristiansen, 144 AD2d 441, 442 [2d Dept 1988].) Further, the preliminary conference order of this court dated March 14, 2007 (Diamond, J.) directing the defendant to maintain the marital residence *271 and pay all related expenses is affirmed during the pendency of this action.
With regard to the California home, the defendant seeks an order directing that the plaintiff share equally in all carrying charges on the parties’ house in San Jose, California, and that the plaintiff either accept a pending counteroffer on the California property, or that a receiver be appointed to sell same forthwith. The plaintiff cross-moves to direct that the house be sold and that the sale proceeds be held in escrow. There were no provisions in the preliminary conference order with respect to the carrying charges on the California home.
The defendant claims that prior to the commencement of the divorce, the home was rented to a tenant whose rental income paid for the majority of the costs of maintaining the property. However, the tenant has since moved out and the defendant claims that he has been paying approximately $2,540 a month for maintenance of the home for the past couple of months and can no longer afford to do so. The defendant states that he can no longer afford to make the payments on the marital property. The defendant also avers that because the plaintiff is not communicating with him, he has been unable to get her to sign a listing agreement. The defendant claims that there was an offer for the purchase of the home at $650,000, and counteroffer made by him at $680,000, that require the plaintiffs consent.
The plaintiff claims that she has agreed to the sale of the California property and to an offer for the sale of the property at the price of $662,000 which had been in contract. However, the plaintiff claims that the defendant refused to sign the contract of sale when the plaintiff added a provision requiring that the proceeds of the sale be held in escrow pending a settlement on the divorce for purposes of equitable distribution. The plaintiff states that she is willing to accept all offers but argues against having to pay half of the carrying charges on the home since it was the defendant who destroyed the deal with the buyer and refuses to permit that the sale proceeds go into escrow. The plaintiff argues that because the defendant was at fault in destroying the deal, he alone should be responsible for the expenses on the home until it is sold.
It is well settled that unless the court alters the legal relationship of husband and wife by granting a divorce, an annulment, a separation, or by declaring a void marriage a nullity, it has no authority to order the sale, pendente lite, of a marital residence owned by the parties as tenants by the entirety. (See *272 Sedgh v Sedgh, 142 Misc 2d 931, 932 [Sup Ct, Nassau County 1989]; Dweck u Dweek, 8 Misc 3d 1013[A], 2005 NY Slip Op 51091[U], *2 [Sup Ct, Nassau County 2005].) The court can only ensure the preservation of marital property by directing a party to make mortgage payments pendente lite as a means of temporary support, or by appointing a receiver when there is a fear of the dissipation of marital assets. (Id.; see also Rosenshein v Rosenshein, 211 AD2d 456 [1st Dept 1995]; Peters v Peters, 127 AD2d 575 [2d Dept 1987].)
Here, because the court has no authority to direct the sale of the California property pendente lite, and the parties have not entered into a court ordered stipulation to that effect, the court cannot direct a party to sign a sales contract. There is also no reason to appoint a receiver absent proof of dissipation of the asset. Thus, the defendant’s motion and plaintiffs cross motion regarding the sale of the California property is denied.
Defendant’s application for plaintiff to pay an equal share of the carrying charges on the parties’ house in San Jose, California, during the pendency of this action is granted.
With regard to counsel fees, Domestic Relations Law § 237 authorizes the court to direct either spouse to pay counsel fees in order to enable the other spouse to carry on or defend the action as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties. (See DeCabrera v Cabrera-Rosete, 70 NY2d 879 [1987].) However, in exercising its discretionary power to award counsel fees, a court should review the financial circumstances of both parties together with all the other circumstances of the case. (DeCabrera, 70 NY2d at 881.)
Here, the defendant does not seek any direct counsel fees at this time but instead seeks leave to request them at a future date. This branch of the defendant’s motion is denied because the defendant’s counsel is always at liberty to request counsel fees related to this action at any time.
The plaintiff, however, cross-moves for interim counsel fees in the amount of $20,000. According to their respective net worth statements, the defendant’s annual adjusted income is approximately $60,000 to $63,000, while the plaintiff’s annual adjusted income is approximately $61,674 annually. Generally, where the financial circumstances of the parties are comparable and a party has sufficient funds to pay counsel fees, an award of interim fees is unwarranted. (See Thomas v Thomas, 221 AD2d 621 [2d Dept 1995]; Cvern v Cvern, 198 AD2d 197 [1st Dept 1993].)
*273 Thus, inasmuch as the parties have comparable incomes, the court finds that they can each afford to pay for their individual counsel fees on this matter and, as such, the branch of the plaintiffs cross motion for $20,000 in counsel fees is also denied.
On May 7, 2007, the parties appeared at a conference in which the court issued an order appointing Joel Rakower to appraise the entity known as Grace Christian Church, a not-for-profit religious organization. The defendant opposes this order and seeks a protective order against the plaintiff preventing her from attempting to evaluate the Church. The plaintiff cross-moves for an order directing the defendant to serve an amended statement of net worth disclosing the defendant’s interest in the Grace Christian Church, the real estate upon which it is situated, and the catering hall rental business operated by the defendant on the premises of said Church, as well as the income and financial benefits derived from such entities by the defendant.
The plaintiff claims that the Church is a marital asset because it is actually the defendant’s “business” which he operates as his “personal piggy bank.” Specifically, the plaintiff claims that the defendant provided $50,000 of their marital money to the Church as start-up capital; defendant controls all of the finances of the Church and makes all financial decisions; and defendant refuses to make any financial disclosures to the Church’s Board of Directors and the Church Administrator, hides his finances from the Church elders, determines his own income, refers to the Church as “my Church” and dismisses anyone who challenges his operation and finances of the Church.
Further, the plaintiff claims that Church staff members are denied access to Church records, and that the defendant utilizes the weekly tithes payed by Church members, usually 10% of their gross income, in whichever way he sees fit. The plaintiff alleges that the Church building and land were purchased with assets belonging to the marriage as well as two of the defendant’s sisters. The plaintiff also alleges that the defendant may have used money from the Church to pay a woman with whom he had an extramarital affair either $750 per week or per month.
The defendant claims that he has no legal interest in the ownership of the Church as it is a not-for-profit religious organization that cannot be appraised and is not a marital asset. The defendant contends that the $50,000 was only a donation to the Church and that he is simply a W-2 employee of the Church.
*274 According to the Church’s amended certificate of incorporation filed March 26, 2003, the corporation was formed under article 10 of the Religious Corporations Law. The purpose of the corporation, in relevant part, is to “organize, form and establish a Christian Church, operated by and accountable to Grace Christian Church, a public charity under section 509 (a) (1) of the Internal Revenue Code.” Further, “Said organization is organized exclusively for charitable, educational, religious, and scientific purposes under section 501 (c) (3) of the Internal Revenue Code.”
The Religious Corporations Law was created to “provide for an orderly method for the administration of the property and temporalities dedicated to the use of religious groups and to preserve them from exploitation by those who might divert them from the true beneficiaries of the trust.” (See Butler v Sacred Heart of Jesus English Rite Catholic Church, 178 Misc 2d 851, 853 [Civ Ct, Kings County 1998].) Yet, it is well established that religious corporations are governed by the same rules of law and equity as other corporations. (See Park Slope Jewish Ctr. v Stern, 128 Misc 2d 909, 913 [Sup Ct 1985], citing Crest Chimney Cleaning Co. v Ahi Ezer Congregation, 62 Misc 2d 1040 [Civ Ct, Queens County 1970].)
Further, pursuant to the Establishment Clause of the First Amendment, courts may address matters relating to a “neutral law of general applicability” within a religious corporation. (See Catholic Charities of Diocese of Albany v Serio, 7 NY3d 510, 522 [2006].) However, in doing so, courts cannot violate the doctrine of church autonomy which prohibits judicial involvement with internal church governance, a determination of ecclesiastical questions, and inquiries or analysis of religious doctrine and practice. (Kelley v Garuda, 36 AD3d 593, 595 [2d Dept 2007] [holding that courts have a right to determine rights of property]; see also Malankara Archdiocese of Syrian Orthodox Church in N. Am. v Thomas, 33 AD3d 887, 890-891 [2d Dept 2006] [permitting judicial enforcement of the church’s constitution].)
Generally, courts can only interfere with ecclesiastical matters when necessary to determine the civil or property rights of the parties (see Cadman Mem. Cong. Socy. of Brooklyn v Kenyon, 279 App Div 1015, 1015 [2d Dept 1952]) so long as such property rights are not merely affected incidentally. (See Upstate N.Y. Synod of Evangelical Lutheran Church in Am. v Christ Evangelical Lutheran Church of Buffalo, 185 AD2d 693 [4th Dept 1992].) Further, “a court or jury can, in some circum *275 stances, measure a religious organization’s or official’s conduct by pre-existing secular standards of care to which all fiduciaries are held.” (See Langford v Roman Catholic Diocese of Brooklyn, 271 AD2d 494, 503 [2d Dept 2000].)
In addition, section 2-b (1) of the Religious Corporations Law makes clear that religious corporations are also subject to the more general Not-For-Profit Corporation Law. (See also Matter of Abrams v Temple of Lost Sheep, 148 Misc 2d 825, 829 [1990].) Under Not-For-Profit Corporation Law § 717 (a), directors and officers of nonprofit organizations must “discharge [their] duties ... in good faith and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions.” Further, “[i]t is firmly established that the directors of a corporation have the fiduciary obligation to act on behalf of the corporation in good faith and with reasonable care so as to protect and advance its interests.” (See Pebble Cove Homeowners’ Assn. v Shoratlantic Dev. Co., 191 AD2d 544, 545 [2d Dept 1993].)
Further, under Internal Revenue Code (26 USC) § 501 (c) (3), a corporation or organization is exempt from federal taxes so long as “no part of the net earnings . . . inures to the benefit of any private shareholder or individual.” In the instant case, the Church’s articles of incorporation dated March 6, 1992, which list the defendant as incorporator, also state that “no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person.”
Nevertheless, in New York, the issue of whether to consider a nonprofit religious corporation as a marital asset for purposes of equitable distribution is one of first impression. However, the court finds that other jurisdictions have addressed the matter under the alter-ego doctrine of reverse piercing of the corporate veil. For instance, the Nebraska Supreme Court in Medlock v Medlock (263 Neb 666, 678, 642 NW2d 113, 125 [2002]) held that a nonprofit religious corporation operated by a former husband was the husband’s alter ego such that the corporation’s assets should have been included in the marital estate. The court considered the fact that the husband had made extensive personal use of corporate funds and assets, that he carried on personal dealings in the name of the corporation, that he had unfettered control of the corporation and that he regularly purchased goods and services for his personal use. (Id.) The court ultimately found that there was nearly complete unity of *276 interest between the husband and the religious corporation. (Id.)
In Medlock, the court noted that “the courts which have confronted the situation have held that nonprofit corporations are subject to the same rules of law as for-profit corporations with respect to the equitable remedy of ‘reverse piercing’ of the nonprofit corporate veil under an alter ego theory of liability.” (Medlock, 263 Neb at 681, 642 NW2d at 127; see also United States v Kitsos, 770 F Supp 1230, 1236 [ND Ill 1991], affd 968 F2d 1219 [7th Cir 1992] [determining that a church was no more than a nominee or an alter ego of the taxpayer and thus subject to the taxpayer’s liabilities]; Loving Saviour Church v United States, 556 F Supp 688 [D SD 1983], affd 728 F2d 1085 [8th Cir 1984] [holding that under both the theories of fraudulent conveyance and alter ego, the property held in the name of the church was property of church founders and could be levied on to satisfy their tax liabilities]; see also Barineau v Barineau, 662 So 2d 1008, 1009 [D Ct App Fla 1995] [holding that a court may inquire into whether a nonprofit corporation is the alter ego of a party in a dissolution proceeding for the purpose of achieving equitable distribution].)
Further, the court noted that it was not unusual for a domestic relations court to pierce the corporate veil in a dissolution proceeding or hold that a spouse’s corporate alter ego may be considered, and distributed, as part of the marital estate. (Medlock, 263 Neb at 677-678, 642 NW2d at 125, citing Lyons v Lyons, 340 So 2d 450, 452 [Ct Civ App Ala 1976] [holding that a court of equity did not err in ignoring the corporate shield behind which the husband attempted to hide marital property after finding that the husband commingled corporate funds with his own, did not hold corporate meetings, minutes or records other than a bank account, and did not file a corporate tax return]; Standage v Standage, 147 Ariz 473, 476-477, 711 P2d 612 [Div 1 1985] [stating that a trial court was correct in finding that a corporation was the husband’s alter ego when the husband, who was the sole manager of the corporation, failed to file corporate income tax returns, file state reports, maintain financial records, or observe corporate formalities]; A & L, Inc. v Grantham, 747 So 2d 832, 838-839 [Miss 1999] [finding that husband’s interest in a corporation and its properties became marital assets subject to equitable distribution after a finding that the husband commingled corporate funds, used corporate funds to pay for personal expenses, and monies from corpora *277 tion settlement were used to construct a new marital home]; State ex rel. Grabhorn v Grabhorn, 28 Or App 357, 360, 559 P2d 923, 924 [1977] [stating that the trial court had been correct in considering the assets of the divorced husband’s corporation after a finding that he had used his corporate alter ego to avoid the payment of support obligations].)
In a for-profit corporation situation in New York, the Appellate Division, First Department, in Goldberg v Goldberg (172 AD2d 316, 316-317 [1st Dept 1991]), granted a distributive award to the plaintiff as her share of the marital property after finding that the defendant had deliberately dissipated and secreted marital funds and assets through the conveyance of various trusts and alter-ego corporations which served as the defendant’s personal pocketbook.
Guided by the foregoing, the court finds that the plaintiffs cross motion raises sufficient questions of fact with regard to the unity of interest between the defendant and the Grace Christian Church as defendant’s alter ego which enables the court, on a good faith basis, to value the Church as a marital asset for purposes of determining equitable distribution at trial. If the court finds at trial that the nonprofit religious corporation, Grace Christian Church, is the defendant’s alter ego due to its operational character, then the not-for-profit religious corporation is subject to the same rules of law that apply to for-profit corporations, and therefore the assets of Grace Christian Church shall be included in the marital estate for purposes of equitable distribution under the theory of “reverse piercing” of the nonprofit corporate veil. (Medlock v Medlock, 263 Neb at 678, 642 NW2d at 125.)
Accordingly, the defendant’s application for a protective order barring the valuation of the Grace Christian Church is denied.
The defendant is further ordered to comply with the plaintiffs discovery demands served upon him on or about February 3, 2007.
The defendant’s motion directing the plaintiff to submit an amended statement of net worth and the plaintiffs cross motion directing the defendant to do the same are denied. Any further discovery should be conducted pursuant to article 31 of the CPLR.
That branch of the plaintiffs cross motion directing the appointment of an appropriate expert, paid for by the defendant, to establish the value for equitable distribution purposes of the *278 defendant’s enhanced earning capacity arising from both his Master’s degree in public health and Ph.D. in ministry, which he obtained during the marriage, is granted. It is well established that a professional license acquired during the marriage is considered marital property whose “value is the enhanced earning capacity it affords the holder” to which a spouse is entitled to an equitable portion of for their direct or indirect contributions. (O’Brien v O’Brien, 66 NY2d 576, 588 [1985].)