■ In the Matter of HERBERT H. LEHMAN COLLEGE FOUNDATION, INC., Respondent, v RICARDO R. FERNANDEZ et al., Appellants. [739 NYS2d 375] —Order, Supreme Court, New York County (Sherry Klein Heitler, J.), entered January 18, 2001, which granted the petition to the extent of declaring that the board of directors as it existed before respondent Fernandez attempted reconstitution of it is the proper board of directors, directing respondents to return to petitioner the Foundation's property and provide the Foundation with access to its offices, books, records, equipment and bank accounts, and directing the parties to amend the Foundation's certificate of incorporation to conform to the amended bylaws governing the composition of the board of directors, unanimously reversed, on the law, without costs, the petition denied and the proceeding dismissed.

The IAS court erred in holding that the amendments to the

Foundation's bylaws, like certain agreements between shareholders in closely held corporations, "may overcome the presumption that the certificate of incorporation controls over any contradictory corporate document" (citing *Zion v Kurtz*, 50 NY2d 92). The analogy between not-for-profit corporations and closely held corporations is not apt and does not constitute a basis for an exception to section 602 (f) of the Not-For-Profit Corporation Law, which provides that the bylaws of a corporation "may contain any provision relating to the business of the corporation, the conduct of its affairs, its rights or powers or the rights or powers of its members, directors or officers, not inconsistent with * * * the certificate of incorporation." "Any attempt to amend or adopt by-laws in a manner that violates the certificate of incorporation of a not-for-profit corporation is null and void" (*Keogh v Connolly*, 235 AD2d 241, 241).

In *Zion (supra)*, the Court of Appeals held, pursuant to Delaware law, that a provision of a shareholders agreement concerning corporate action was enforceable even though it was not contained, as required by the Delaware statute, in the certificate of incorporation. Noting that Delaware law did not prohibit shareholders from taking all management functions away from the directors of a close corporation, the Court held that the certificate of incorporation could be ordered reformed because "there are no intervening rights of third persons, the agreement requires nothing that is not permitted by statute, and all of the stockholders of the corporation assented to it" (50 NY2d at 102). Under such circumstances, a court may presume that the shareholders intended to perform the "ministerial" act of amending the certificate of incorporation to effectuate the provisions of the agreement (*see, Adler v Svingos*, 80 AD2d 764, 765).

However, the directors of a not-for-profit corporation do not act on behalf of shareholders who control the corporation's certificate of incorporation, and its board. They act on behalf of beneficiaries who have no direct voice in governing the corporation and must depend on the State to represent and protect their interests (*see, Matter of Manhattan Eye, Ear & Throat Hosp. v Spitzer*, 186 Misc 2d 126). "The Not-For-Profit Corporation Law * * * requir[es] court approval of fundamental changes in the life of a type B charitable corporation * * *, since there are no shareholders whose approval can be sought" (*id.* at 151). Moreover, the Attorney General must be given notice of an application for approval "to change or eliminate a purpose or power enumerated in the corporation's certificate of incorporation, or to add a power or purpose not enumerated therein" (N-PCL 804 [a] [ii]).

Directing the parties to amend the Foundation's certificate of incorporation to conform to the amended bylaws governing the current composition of the board of directors in effect approved fundamental changes in the life of the Foundation without following the procedures prescribed by law. The court found that the bylaw amendments do not require anything not permitted by statute or by a State or City University of New York regulation and that there was no indication that amendments to the Foundation's certificate of incorporation "would not be approved by the necessary agencies." But the court may have underestimated the impact of the bylaw amendments on the powers and purpose of the Foundation (see, N-PCL 804 [a] [ii]).

According to its 1982 certificate of incorporation, the Foundation was established for the purpose of "receiving, holding, and administering gifts for the use and benefit of Herbert H. Lehman College." To insure that the Foundation serves this purpose of supporting the College, the certificate gives the College considerable control over the Foundation's board. It designates the president of the College as the chairman of the board, sets the number of directors at 11, with a built-in majority of seven who hold offices of the College, and gives the College president the power to designate the remaining three outside directors and the one College-alumnus director. In 1986, the bylaws were amended to increase the total number of directors by authorizing the president to designate an unspecified number of additional directors. After respondent Fernandez became president of the College in 1990, the bylaws were amended again, at his behest, for purposes of encouraging diversity and community participation. The later amendments increased the number of directors again, shifted the majority to outside directors, provided for only five ex officio directors, stripped the president of his power to designate the outside directors, and removed him as chair of the Foundation. By thus diluting the influence of the College and its president on the governance of the Foundation, in effect transforming the Foundation into an independent entity unaccountable to the College, the bylaw amendments changed the Foundation's powers and purpose as enumerated in its certificate of incorporation. There can be no doubt that any like amendment to the certificate would require judicial approval on notice to the Attorney General (see, N-PCL 804 [a] [ii]).

The court's attempt to resolve this matter in a pragmatic and equitable fashion is understandable in light of the uncontradicted factual background that demonstrates that the complained-of changes in the bylaws were instigated by the

very president who summarily vitiated those bylaws because of his displeasure with the unanticipated consequences stemming from the changes he had initiated. Notwithstanding the apparent unseemliness of the foregoing, the law proscribes the continuation of the improperly constituted board of directors as it existed before its current composition under the aegis of respondents-appellants. Under the controlling law, the College is in no way precluded from taking appropriate steps, in conformance with all pertinent governing provisions, to protect its interests and to insure that the Foundation properly manages its and the College's funds. However, in light of the foregoing history, it is to be hoped that the College will also manifest sensitivity to the concerns of petitioner. Concur—Nardelli, J.P., Saxe, Ellerin and Lerner, JJ.