OPINION OF THE COURT
Rosalyn Richter, J.
*573 In this CPLR article 78 proceeding, petitioners Jean E. Sealey, Michael H. Alderman and John H. Laragh are officers and/or directors of respondent American Society of Hypertension, Inc. (ASH), a not-for-profit corporation. Petitioners seek a judgment declaring null and void and setting aside the May 17, 2005 vote of the ASH membership adopting revised bylaws for the organization. Petitioners maintain that the old bylaws are still in effect because there was not a valid quorum at the May 17 meeting. Petitioners further seek a judgment enjoining ASH from exercising any powers, enacting any resolution or motion, or taking any action with respect to provisions in the revised bylaws relating to the removal of officers and directors of ASH.
Petitioner Jean E. Sealey is the president-elect of ASH, having been elected by the organization’s members to a two-year term at the 2004 annual meeting. As president-elect, she will automatically become president of ASH at the 2006 annual meeting. By virtue of her position as president-elect, Sealey is a member of the ASH’s board of directors. Petitioner Michael H. Alderman has been the organization’s chair of the Continuing Medical Education (CME) Committee since 2003. Petitioner John H. Laragh is the editor in chief of the American Journal of Hypertension, a separately incorporated not-for-profit scientific journal. Under the old bylaws, both Alderman and Laragh were ex officio voting members of ASH’s board of directors by virtue of their respective positions.
Under the organization’s old bylaws, any amendment to the bylaws requires approval by two thirds of the members present and voting at the annual meeting at which the amendment is presented for vote. At the May 17, 2005 annual membership meeting, the adoption of revised bylaws was put to a vote of the members. At the time of the meeting, there were approximately 2,384 members of ASH. One hundred ten members physically in attendance voted on the bylaws measure and another 445 members voted by proxy. After the votes were tabulated, the results showed that 428 members voted to adopt the revised bylaws, well in excess of the two-thirds vote needed.
Under the revised bylaws, petitioners Alderman and Laragh were removed from their positions as ex officio voting members of the board of directors. The new bylaws do not include the chair of the CME Committee on the list of ex officio board members, thus ending Alderman’s position on the board. Although the new bylaws provide that ex officio board status is granted to the editor in chief of any professional journal affili *574 ated with ASH, in July 2005, ASH’s president severed the organization’s affiliation with the American Journal of Hypertension, thus extinguishing Laragh’s service on the board.
After the revised bylaws were adopted, the board of directors of ASH began conducting the organization’s affairs in accordance therewith. In August 2005, the board voted to schedule a special meeting of the membership on September 8, 2005 to consider a motion that Sealey be removed as president-elect without cause. Prior to the meeting, this article 78 petition was filed and the court issued a temporary restraining order preventing ASH from holding the special meeting. That order was subsequently modified by Justice James McGuire of the Appellate Division, First Department, so as to allow the meeting to go forward, but restraining the counting of the votes until further order of this court. The meeting was held and four members attended in person and 424 members voted by proxy on the motion to remove Sealey. The results of that vote remain under seal.
The core issue before the court is whether a quorum of ASH’s members was present at the May 17, 2005 annual meeting. Not-For-Profit Corporation Law § 608 provides the general quorum requirement for meetings of members. Under paragraph (a) of that statute, a “quorum . . . for the transaction of any business” is defined as “[m]embers entitled to cast a majority of the total number of votes entitled to be cast [at a membership meeting].” Paragraph (b) provides that the certificate of incorporation may provide for a lesser quorum not less than “the members entitled to cast one hundred votes.”[1] ASH’s certificate of incorporation is silent on the issue of what constitutes a quorum, and the old bylaws provide for a quorum of 20 members.
Under Not-For-Profit-Corporation Law § 602 (f), a corporation’s “by-laws may contain any provision relating to . . . the rights or powers of its members, directors or officers, not inconsistent with this chapter or any other statute of this state or the certificate of incorporation” (emphasis added). Thus, a bylaws provision that is inconsistent with the Not-For-Profit Corporation Law is void and unenforceable. (See, e.g., Blanc v Windham Mtn. Club, 115 Misc 2d 404 [Sup Ct, NY County 1982], affd 92 AD2d 529 [1st Dept 1983] [bylaws provision that is in conflict *575 with state law is void, and unenforceable]; Wyckoff, Practice Commentaries, McKinney’s Cons Laws of NY, Book 37, N-PCL 602 [“(b)y-laws may not contain a provision which is inconsistent with the N-PCL”].)
Applying these principles, the court concludes that the provision in ASH’s bylaws setting a quorum at 20 members is void and unenforceable because it is in conflict with Not-For-Profit Corporation Law § 608 (b) requiring a quorum to be at least 100 members. Because the 20-member quorum provision is invalid, the quorum requirement for ASH’s May 17, 2005 annual meeting was a majority of the members, as per the provisions of Not-For-Profit Corporation Law § 608 (a). Since a majority of ASH’s members is approximately 1,193 members, it is clear that there was no valid quorum for the May 17, 2005 annual meeting. Thus, the vote of the ASH membership taken at that meeting which resulted in the adoption of revised bylaws is null and void, and ASH is still governed by the old bylaws. (See, e.g., Matter of Sousa v New York State Council Knights of Columbus Found., 10 NY2d 68 [1961] [the election of directors of charity without quorum is invalid]; Matter of Herbert H. Lehman Coll. Found, v Fernandez, 292 AD2d 227, 228 [1st Dept 2002] [“(a)ny attempt to amend or adopt by-laws in a manner that violates the certificate of incorporation of a not-for-profit corporation is null and void”].)
ASH concedes that the 20-person quorum provision of the old bylaws is in conflict with Not-For-Profit Corporation Law § 608 (b). Despite this concession, ASH argues that it properly amended its bylaws by way of Not-For-Profit Corporation Law § 608 (c). That section provides:
“Action to amend the . . . by-laws to conform to paragraph (b) may be taken at a special meeting of members at which the quorum requirements applicable to the corporation immediately prior to the effective date of this chapter are fulfilled, but action may be taken only once under this paragraph.”
ASH argues that prior to the effective date of article 6 of the Not-For-Profit Corporation Law, the quorum requirement for corporations the size of ASH was not less than nine members. ASH maintains that since the May 17, 2005 meeting had at least nine members, there was a valid quorum. However, the court concludes that ASH cannot avail itself of this provision since ASH was not in existence prior to the effective date of article 6. Thus, there could be no “quorum requirements applic *576 able to the corporation immediately prior to the effective date of this chapter” (N-PCL 608 [c] [emphasis added]). The plain words of the statute make clear that its provisions are only applicable to those corporations that existed at the time of its enactment. By using the word “the” to modify the word “corporation,” it is clear to this court that the statute does not refer to corporations in general, but to the specific corporation seeking to utilize this section. ASH’s reading of this paragraph would allow any corporation regardless of its incorporation date to alter its quorum requirements under this provision. ASH cites no authority for such a broad reading.
The legislative history supports petitioners’ interpretation of this paragraph. In the explanatory memorandum on the bill that added section 608 (c), the Joint Legislative Committee to Study Revision of Corporation Laws stated:
“The amendment to section 608 (c) is intended to meet the problem of not-for-profit corporations which had by-laws fixing a reduced quorum for meetings of members which did not meet the requirements of Section 608 (b), and which neglected to amend such by-laws prior to the effective date of the statute. As a result such corporations find themselves unable to assemble an absolute majority of members for a meeting ... to amend their bylaws to provide for a permitted lesser quorum. The amended [sic] would permit one meeting to be held under the quorum requirements of the old by-laws for the purpose of amending such by-laws to conform to the not-for-profit corporation law” (Bill Jacket, L 1971, ch 1058, at 20 [emphasis added]).
It is clear by this language that the intent of paragraph (c) was to make it easier for corporations existing at the time of its enactment to amend their bylaws to conform with the law. Since ASH was formed after the effective date of article 6, the purported adoption of the new bylaws could not proceed under Not-For-Profit Corporation Law § 608 (c).
Such a conclusion is buttressed by the recent enactment of a new amendment to Not-For-Profit Corporation Law § 608. Section 608 (e), which goes into effect in approximately six months, sets forth a procedure whereby a corporation that finds it impractical or impossible to obtain a quorum can petition the Supreme Court, on notice to the Attorney General, to dispense with the quorum requirements set by the bylaws or by statute. Thus, the Legislature recognized the predicament that ASH is *577 currently in and provided a new method for seeking permission to have a lesser quorum than the law mandates. If corporations such as ASH that came into existence after the effective date of article 6 were permitted to utilize Not-For-Profit Corporation Law § 608 (c), there would have been no need to have enacted the new amendment to the statute.
In sum, the plain language of section 608 (c), the legislative history of that section and the recent enactment of section 608 (e) make clear that section 608 (c) was not an available avenue by which ASH could amend its bylaws. Thus, the proper quorum at the May 17, 2005 meeting would have been a majority of ASH members, which ASH concededly did not meet. Since there was no quorum, the amendments to the bylaws are without effect, and ASH must conduct its business by the old bylaws. Likewise, there was no majority of members at the vote to remove Sealey as president-elect and that vote, whatever its outcome, can have no effect. Finally, Alderman and Laragh, who were removed from their board positions under provisions of the new bylaws, must be reinstated to the Board.[2]
Accordingly, it is ordered and adjudged that the CPLR article 78 petition is granted; and it is further ordered and adjudged that the vote of the ASH membership adopting revised bylaws at the May 17, 2005 annual meeting is null and void and is hereby set aside; and it is further ordered and adjudged that ASH is enjoined from exercising any powers, enacting any resolution or motion, or taking any action whatsoever with respect to provisions in the revised bylaws relating to the removal of officers and directors of ASH; and it is further ordered and adjudged that ASH is enjoined from taking any actions under the revised bylaws that would deprive petitioners Alderman or Laragh of their rights as ex officio voting members of the board of directors of ASH; and it is further ordered and adjudged that ASH is enjoined from taking any actions under the revised bylaws to remove petitioner Sealey from her position as an officer or director of ASH.

. Alternatively, a quorum can be one tenth of the total number of votes entitled to be cast if that number is less than 100. Since for this organization that figure is greater than 100, this provision is inapplicable.

. In light of this disposition, the court need not address Sealey’s contention that the voting and proxy process was flawed, or the parties’ dispute as to whether Sealey could have been removed without cause by a vote of the membership. Nor does the court need to decide what other past actions by the membership might be invalid, since those actions are not before the court.