■ MALANKARA ARCHDIOCESE OF SYRIAN ORTHODOX CHURCH IN NORTH AMERICA et al., Respondents, v MATHEW THOMAS et al., Appellants. BOARD OF DIRECTORS OF ST. MARY's MALANKARA SYRIAN ORTHODOX CHURCH OF ROCKLAND et al., Nonparty-Appellants. [824 NYS2d 101]—

In an action, inter alia, to permanently enjoin the defendants from entering the premises of and using the property of the St. Mary's Malankara Syrian Orthodox Church of Rockland, the appeal is from a judgment of the Supreme Court, Rockland County (Sherwood, J.), entered May 23, 2005, which, upon an order of the same court dated October 4, 2004, granting the plaintiffs' motion for summary judgment, and upon an order of the same court dated April 5, 2005, upon reargument, adhering to that determination, and denying that branch of the motion of the Board of Trustees and Members of St. Mary's Malankara Syrian Orthodox Church of Rockland which was, in effect, for leave to intervene, inter alia, enjoined the defendants from entering the premises of and using the property of the St. Mary's Malankara Syrian Orthodox Church of Rockland.

Ordered that the judgment is affirmed, with costs.

At issue here is ownership of certain property held in the name of St. Mary's Malankara Syrian Orthodox Church of Rockland (hereinafter St. Mary's). St. Mary's constitution states that St. Mary's was under the spiritual direction of the Syrian Orthodox Church and could "not be amalgamated with any other Church or religious group" without the consent of the Patriarch of the Syrian Orthodox Church (hereinafter the Patriarch) and the Archbishop of its diocese, known as the Malankara Archdiocese of the Syrian Orthodox Church in North America (hereinafter the Archdiocese). The constitution further provided that the Archdiocese was to be notified of any sale, transfer, or transaction of real estate.

The instant controversy arose when the Patriarch replaced

the Archbishop of the Archdiocese with a new Archbishop, who in turn replaced St. Mary's vicar. At that juncture, 29 people who claimed to be members of St. Mary's signed a document stating that St. Mary's had resolved to be affiliated with the Malankara Orthodox Syrian Church—a religious group separate and distinct from the Syrian Orthodox Church—and refused to allow the new vicar into St. Mary's. The instant action to reclaim St. Mary's property was commenced in St. Mary's name by the Archdiocese.

Contrary to the analysis of our dissenting colleague, resolution of the instant dispute may be resolved based upon neutral principles of law—including the provisions of St. Mary's constitution—without resort to an analysis of religious doctrine (*see First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.*, 62 NY2d 110, 116 [1984], *cert denied* 469 US 1037 [1984]; *see also Park Slope Jewish Ctr. v Congregation B'nai Jacob*, 90 NY2d 517, 521 [1997]). Here, the defendants acknowledge that they changed their affiliation from the Syrian Orthodox Church to the Malankara Orthodox Syrian Church in violation of the provisions of St. Mary's constitution that required the consent of the Syrian Orthodox Church, and the Supreme Court ruled in favor of the plaintiffs on this ground. Enforcement of the provisions of St. Mary's constitution does not violate the Establishment Clause (*see Keogh v Connolly*, 235 AD2d 241 [1997]).

The decision of this Court in *Malankara Archdiocese of Syrian Orthodox Church in N. Am. v Malankara Jacobite Ctr. of N. Am., Inc.* (24 AD3d 626 [2005]) is distinguishable from the instant case, on the ground that the Malankara Jacobite Center of North America (hereinafter the Center) in the prior case never acknowledged its subservience to any larger body. Citing *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.* (*supra* at 124), the Supreme Court in that case held that since the Center's certificate of incorporation, constitution, and by-laws negated any intention on the part of the Center to dedicate its property to the purpose of a larger body in a religious hierarchy, no declaration of an implied trust for the denominational church was warranted. The question of whether an implied trust was created for the benefit of those members of a divided congregation who adhere to the principles of the founders of the religion required an inquiry into church doctrine which constituted a nonjusticiable religious dispute.

As noted by our dissenting colleague, the defendants attempted to inject a dispute over religious doctrine into this controversy by asserting that their decision to change their af-

filiation was prompted by a desire to remain faithful to the true teachings of their religion. The Supreme Court properly declined to consider this argument.

Moreover, under the circumstances of this case, the Supreme Court properly denied that branch of the nonparties' motion which was, in effect, a belated application for leave to intervene in the action (*see* CPLR 1012 [a] [3]; *Vacco v Herrera,* 247 AD2d 608 [1998]; *Breiterman v Elmar Props.,* 123 AD2d 735, 736 [1986]). Adams, J.P., Goldstein and Luciano, JJ., concur.

Spolzino, J., (dissenting, and voting to reverse the judgment, upon reargument, to grant the motion for summary judgment and to vacate the order dated October 4, 2004, to deny, as academic, that branch of the nonparties' motion which was, in effect, for leave to intervene, to modify the order dated April 5, 2005, accordingly, and to award summary judgment to the defendants dismissing the complaint, upon searching the record, with the following memorandum). I agree with my colleagues in the majority that the rule of decision with respect to this appeal is provided by *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.* (62 NY2d 110 [1984], *cert denied* 469 US 1037 [1984]). I differ, however, as to the result which the application of that rule requires. Because I believe that it compels us to resolve this matter in favor of the defendants, I dissent, respectfully.

This appeal concerns the disposition of the property of St. Mary's Malankara Syrian Orthodox Church of Rockland (hereinafter St. Mary's). It arises out of a dispute between the members and clergy of St. Mary's, on the one hand, and the St. Mary's denominational hierarchy, specifically the Patriarch of the Syrian Orthodox Church (hereinafter the Patriarch), and the Archbishop he appointed for the Malankara Archdiocese of the Syrian Orthodox Church in North America, on the other, as to the allegiance of St. Mary's and its members to the Catholicose of the East, in Kottayam, India. It is undisputed that, on June 23, 2002, St. Mary's members unanimously "decided to affiliate with the American Diocese of Malankara since St. Mary's was formed to establish a Malankara Church and has been following the customs and practices of the Malankara Church." The Patriarch thereafter removed St. Mary's vicar and declared that those who supported the resolution were no longer members of St. Mary's.

In *First Presbyt. Church,* the Court of Appeals held that "even though members of a local group belong to a hierarchical church, they may withdraw from the church and claim title to real and personal property, provided that they have not previ-

ously ceded the property to the denominational church" (*id.* at 120). Here, title to the St. Mary's real property is held in the name of St. Mary's, not the name of Archdiocese or any other denominational entity, and nothing in the deed established any right to possession of the property in the denominational church. St. Mary's constitution, moreover, provides that all property shall be held in St. Mary's name. The constitution of the Syrian Orthodox Church likewise contains no provision that reposes any property interest in the Syrian Orthodox Church. Contrary to the view of my colleagues in the majority, I read *First Presbyt. Church* as precluding us from finding that church property has been ceded to the denomination on the basis of provisions in the organizational documents that are unrelated to real property ownership. Viewed in that light, the situation presented here is essentially identical to that presented in *Malankara Archdiocese of Syrian Orthodox Church in N. Am. v Malankara Jacobite Ctr. of N. Am., Inc.* (24 AD3d 626 [2005]). "[L]ook[ing] only to provisions relating to property," as we are enjoined by *First Presbyt. Church* (62 NY2d at 123), there is, in my view, no basis upon which it can be concluded that St. Mary's real property is held for the benefit of the Syrian Orthodox Church.

*First Presbyt. Church* recognizes, however, that the trust relationship necessary to sustain the plaintiffs' claims may arise by implication (*id.* at 124). The Supreme Court, in a thorough and thoughtful analysis, found such an implication in a provision of St. Mary's constitution, which states that "[t]his parish shall not be amalgamated with any other Church or religious group without the formal support of the Archbishop of the Archdiocese, and the final approval of His Holiness the Patriarch of Antioch and all the east, the Supreme Head of the Universal Syrian Orthodox Church." The Supreme Court concluded, on this basis, that the members' affiliation decision had effectuated such an amalgamation and that, since the Patriarch had not approved that determination, and was, in fact, opposed to it, "the use of the property belongs with the group that remains loyal to the Malankara Syrian Orthodox Church."

In my view, it is this dispute that the Court of Appeals commanded us in *First Presbyt. Church* to avoid. There, the Court of Appeals recognized two species of trust that might benefit a denominational church in a dispute such as that which is presented here: "an implied trust for the benefit of those members of a divided congregation who adhere to the principles of the founders of the religion" and "an implied trust for the denominational church" (*id.* at 124). The Court held, however,

that "[t]he first type of trust must be rejected where it leaves the courts in the position of determining what the original principles of the church were—the inquiry into doctrine precluded by *Presbyterian Church v Hull Church* (393 US 440, *supra*) and earlier State decisions" (*First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am., supra* at 125).

As I see it, that is precisely what the Supreme Court did here in an attempt to resolve this matter. Essentially, the Supreme Court determined that the defendants had left the faith and had therefore forfeited the property to those who had remained faithful. The defendants argue, however, that their decision to affiliate with the American Diocese of Malankara was prompted by their desire to remain faithful to the teachings of the religion, from which they perceived the Patriarch to have departed. Regardless of who is right or wrong, this is a doctrinal dispute into which the civil courts may not enter. It was inappropriate, in my view, therefore, and inconsistent with *First Presbyt. Church,* for the Supreme Court to have resolved this dispute on that ground. Since an implied trust benefiting the Syrian Orthodox Church cannot be founded on any nondoctrinal basis, title must remain in St. Mary's, the members of which "may withdraw from the church and claim title to real and personal property, provided that they have not previously ceded the property to the denominational church" (*id.* at 120).

The fact that the members of St. Mary's who supported the resolution in issue have been declared by the Patriarch to be members of St. Mary's no longer is, in my view, without legal significance. The action of the Patriarch expelling the dissident members of the church occurred after they had adopted the resolution departing from his jurisdiction. Although that determination, made by the religious authority to expel a member for doctrinal reasons, is not a proper subject of judicial review (*see Park Slope Jewish Ctr. v Stern,* 128 AD2d 847, 848 [1987]; *Matter of Kissel v Russian Orthodox Greek Catholic Holy Trinity Church of Yonkers,* 103 AD2d 830 [1984]), nevertheless, it cannot affect the decision that already had been made, regardless of the manner in which and the authority by which the expulsions occurred.

Accordingly, I would deny summary judgment to the plaintiff and, upon searching the record, award summary judgment to the defendants dismissing the complaint. In light of the foregoing, I would deny, as academic, that branch of the nonparties' motion which was, in effect, for leave to intervene.