The appeal from the order dated November 23, 2010, must be *788 dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see Matter of Aho, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501 [a] [1]).
The plaintiffs commenced this action, inter alia, for a declaration that the individual plaintiffs are members of the board of directors of the plaintiff Northern Services Group, Inc. (hereinafter NSG), a not-for-profit corporation which was formed in 2000 to manage seven nursing homes and assisted living facilities. This dispute involves, on one side, the defendant Chevre Liady Nusach Hoary (hereinafter Chevre Liady), an Orthodox Jewish congregation, and its Grand Rabbi, Rabbi Menashe Klein, and, on the other side, the plaintiffs Edgar Gluck, Elisha Roseman, George Margareten, Thomas Paneth, Abraham Kleinbart, Moshe Gottesman, Bernard Rosenblum, Leah Werner, Yaakov Singer, and Paul Zicherman (hereinafter collectively the director plaintiffs), who were members of NSG’s board of directors.
In 1981, Chevre Liady agreed to act as a “sponsor” for the principals of what became the first NSG home. Although Chevre Liady did not formally participate in the management of the home, the relationship between Chevre Liady and those principals remained close, both prior to and after the 2000 formation of NSG. Rabbi Klein counseled NSG’s management on matters relating to Jewish law and culture within the homes, and NSG donated much of its excess income to Chevre Liady and Rabbi Klein’s charitable endeavors.
In 2004, NSG was audited by the Internal Revenue Service (hereinafter the IRS), which raised concerns about, inter alia, the sums donated by NSG to Chevre Liady, and Chevre Liady’s apparent control over NSG. In an attempt to address these concerns, in July 2004, NSG’s three-member board of directors, consisting of Elisha Roseman, George Margareten, and Rabbi Klein’s brother Benjamin Klein (hereinafter collectively the three-member board of directors), amended NSG’s bylaws to make Chevre Liady, acting through Rabbi Klein, a member of NSG within the meaning of article 6 of the Not-For-Profit Corporation Law.
Despite these efforts, the IRS was not satisfied. However, in April 2006, NSG and the IRS entered into a “closing agreement” settling the IRS’s claims against NSG. Pursuant to that agreement, NSG was required, inter alia, to expand its board from 3 to 13 members, eight of whom were to be “indepen *789 dent.” “Independent” was defined as, inter alia, not being an officer of Chevre Liady or a member of Rabbi Klein’s family. The initial members of the expanded 13-member board were named in the closing agreement, which stated that the board consisted of those individuals as of the date of its execution.
In June 2006, in response to the requirements of the closing agreement, the three-member board executed a “Unanimous Written Consent” which elected the 10 additional directors named in the closing agreement and amended NSG’s bylaws in response to its requirements. Among the amendments were provisions abrogating Chevre Liady’s rights, as a member, to vote, to participate in the adoption, amendment, or repeal of bylaws, and to discharge directors, although these amendments were not specifically required by the terms of the closing agreement.
Shortly after the board was expanded and the amended bylaws were adopted, two of the independent directors named in the closing agreement and elected by the three-member board declined to serve on NSG’s board. In response, NSG’s nominating committee (which had been established in response to a requirement in the closing agreement) began evaluating candidates and called a special meeting of the board of directors for November 16, 2006. Rabbi Klein objected to the November 16, 2006, special meeting. He contacted several members of the board and voiced his objections, even going so far as forbidding them from attending the meeting, and Benjamin Klein sent a notice to the nominating committee stating that the proposed meeting was contrary to Jewish law and directing them, in Rabbi Klein’s name, not to convene the meeting.
Despite Rabbi Klein’s objections, the board nevertheless convened the November 16, 2006, special meeting and, at that meeting, elected two replacement independent directors. In response, Chevre Liady, as NSG’s sole member, held a member’s meeting on November 20, 2006, at which it purportedly discharged NSG’s entire board of directors and, in a letter of that date, informed the directors of its decision. The board responded by holding a special meeting on November 30, 2006, at which it purportedly adopted amended bylaws removing Chevre Liady as NSG’s sole member and replaced certain directors perceived to be loyal to Rabbi Klein. On December 24, 2006, in response to concerns about whether notice to the directors was required prior to the November 20, 2006, discharge of NSG’s board of directors (which was the subject of a related action), Chevre Liady held a second member’s meeting at which it reaffirmed its discharge of NSG’s board of directors. On December 27, 2006, Chevre Liady issued a written decision to that effect.
*790 Due to the foregoing, there was uncertainty regarding who controlled the board of NSG. Accordingly, the director plaintiffs, on behalf of NSG (hereinafter collectively the plaintiffs), commenced this action seeking declaratory and injunctive relief establishing their right to control NSG. Chevre Liady and Morris Klein counterclaimed for a judgment declaring that the director plaintiffs had been properly discharged, and for related injunctive relief. The plaintiffs moved, and the defendants cross moved, inter alia, for a preliminary injunction. The Supreme Court, in an order dated April 30, 2007, granted the defendants’ cross motion, the plaintiffs appealed, and this Court affirmed (see 55 AD3d 668 [2008]). The plaintiffs then moved, and the defendants’ cross-moved, for summary judgment with respect to the causes of action for declaratory and permanent injunctive relief. The Supreme Court denied the plaintiffs’ motion and granted the defendants’ cross motion for summary judgement on their counterclaim. A judgment was entered in favor of the defendants, the plaintiffs appeal, and we affirm.
The closing agreement purports to expand NSG’s board of directors without action by the existing three-member board. However, pursuant to N-PCL 703 (b), a corporation’s “[directors shall be elected or appointed in the manner and for the term of office provided in the certificate of incorporation or the by-laws.” The parties agree that, as of April 2006, the 2004 bylaws governed, and those bylaws provide that “[n]ewly created directorships resulting from an increase in the number of Directors and vacancies occurring in the Board of Directors for any reason shall be filled by a vote of the majority of Directors then in office.” Accordingly, pursuant to N-PCL 703 (b) and the bylaws, the closing agreement could require NSG’s board to expand itself as directed therein but could not, by fiat, make that change. Consequently, the three-member board remained the NSG board and, until their execution of the unanimous consent electing the additional directors, they, and only they, could act on its behalf. Therefore, they had the authority to amend NSG’s bylaws via that consent.
While the three-member board had the authority to amend NSG’s bylaws, however, it could do so only in a manner authorized by the existing bylaws and by statute. The record demonstrates that Chevre Liady was effectively installed as a member of NSG (see N-PCL 601 [c] [2]). Pursuant to N-PCL 612, where a corporation has members, “The certificate of incorporation or the by-laws may provide, either absolutely or contingently, that the members of any class shall not be entitled to vote, or it may limit or define the matters on, and the cir *791 cumstances in, which a member or a class of members shall be entitled to vote . . . but no such denial, limitation or definition of voting rights shall be effective unless at the time one or more classes of members, singly or in the aggregate, are entitled to full voting rights” (N-PCL 612 [emphasis added]; see also 6 White, New York Business Entities ¶ N612.01 at 6-89, 6-90 [14th ed]). Here, given that NSG had only one member, namely Chevre Liady, that member could not be deprived of the right to vote except via its removal or resignation as a member of NSG (see N-PCL 612, 605 [a]; see generally Matter of Herbert H. Lehman Coll. Found. v Fernandez, 292 AD2d 227, 228 [2002]; Procopio v Fisher, 83 AD2d 757, 758 [1981]). Accordingly, to the extent that the amendments to NSG’s bylaws addressed other matters, they were properly amended but, to the extent that they attempted to abrogate Chevre Liady’s rights, they were legally ineffectual.
Nevertheless, pursuant to the bylaws then in effect, which paralleled the language of N-PCL 602 (b) and (c), Chevre Liady had the right to veto any amendments made by the board (see N-PCL 602, 612; 6 White, New York Business Entities ¶ N602.02 at 6-27 [14th ed]). Chevre Liady’s conduct subsequent to the amendment of the bylaws makes clear that it vetoed those provisions reciting that it would not have the right to vote, abrogating its right to remove directors, and abrogating its right to adopt, amend, or repeal bylaws.
The record demonstrates that Chevre Liady had, and retained, the right to discharge NSG’s directors. Indeed, it is far from clear that Chevre Liady’s right, as NSG’s sole member, to discharge directors could be abrogated (see N-PCL 603 [b]; 612; 6 White, New York Business Entities ¶ N706.01 at 7-40, 7-41 [14th ed]). In any event, the question is whether, on November 20, 2006, Chevre Liady properly did so.
The plaintiffs contend that Chevre Liady’s purported November 20, 2006, discharge of the board of directors was ineffectual because it failed to give the directors notice and a chance to be heard. However, pursuant to N-PCL 605 (a), only members are entitled to notice of members’ meeting. Given that a primary role of the membership is to elect or discharge directors (see N-PCL 603 Ob]; 706 [a], [b]) and the provisions of N-PCL permitting the membership to waive notice of its meetings (see also 6 White, New York Business Entities ¶ N606.01 at 6-49, 6-50 [14th ed]), absent any statutory requirement or a provision in the certificate of incorporation or bylaws, there is no reason to read a requirement of notice into N-PCL 605 (a). Likewise, neither NSG’s certificate of incorporation nor its bylaws require the *792 member to give the board notice of its meetings or proposed actions. Similarly, although the director plaintiffs object that they were discharged without cause, the 2004 bylaws gave Chevre Liady the right to remove directors without cause, as permitted by N-PCL 706 (b) and, as noted above, Chevre Liady vetoed the three-member board’s attempt to amend this provision of the bylaws. In any event, in its December 27, 2006, decision affirming its discharge of the board, Chevre Liady set forth cause for the directors’ discharge.
In light of the foregoing, we need not reach the plaintiffs’ remaining contention. Florio, J.P., Lott, Sgroi and Miller, JJ., concur.