Alpha Phi Alpha Senior Citizens' Center, Inc., Plaintiff,

against
Zeta Zeta Lambda Co., Inc., et al., Defendants, and Kenyatta Andrews, President of Zeta Zeta Lambda Chapter of Alpha Phi Alpha Fraternity, Inc.


710037/2014

For Plaintiff: McGlashan Law Firm, P.C., by Patrick A. McGlashan, Esq., 370 Lexington Avenue, New York, N.Y. 10017
For Defendant: Bailey & Bailey, LLC, by Lamont R. Bailey, Esq., 186-17 Merrick Boulevard, Springfield Gardens, N.Y. 11413
The Receiver appointed by the Court: Spencer C. Gibbs, Esq., 2610 Frederick Douglass Boulevard, New York, N.Y. 10030 [taking no position on the motions]


Martin E. Ritholtz, J.

The following papers were read on this motion by plaintiff Alpha Phi Alpha Senior Citizens Center, Inc. for, inter alia, summary judgment on its second, fifth, and sixth causes of action and for summary judgment dismissing the cross claim against it, and on this cross motion by the defendants Zeta Zeta Lambda Co., Inc. and the individual defendants, for, inter alia, summary judgment dismissing the complaint against them
Papers Numbered
Notice of Motion, Affirmation, and Exhibits ECF docs. 46-61
Notice of Cross Motion, Affirmation, and Exhibits ECF docs. 65-86
Reply ECF docs. 87-108
MARTIN E. RITHOLTZ, J.:
"Behold, how good and how pleasant it is for brethren to dwell together in unity." [Psalms 133:1]
" . . . to further brotherly love and a fraternal spirit within the organization." [Preamble of Alpha Phi Alpha Constitution, adopted December 4, 1907]
Notwithstanding the above-quoted themes of harmony, the instant litigation involves a bitter dispute between alumni members of Alpha Phi Alpha (presently known as the Alpha Phi Alpha Fraternity, Inc.), the first African-American fraternity in the history of the United States, founded officially on December 4, 1906, at Cornell University in Ithaca, in Tompkins County, the State of New York. 
Alpha Phi Alpha has a proud history. It has developed into a social organization addressing many great issues and spearheading philanthropic programs. Indeed, shedding light on its humanitarian and humanist mission, the plaintiff here is a senior citizens center embodying the name of Alpha Phi Alpha, to wit, Alpha Phi Alpha Senior Citizens Center, Inc. Among the great members of Alpha Phi Alpha are these immortals: United States Supreme Court Justice Thurgood Marshall, Olympian Jesse Owens, and Nobel Prize winner Dr. Martin Luther King, Jr.
THE MOTION
I. The Allegations of the Complaint
Plaintiff Alpha Phi Alpha Senior Citizens Center, Inc., a New York not-for- profit corporation, provides recreational, cultural, and educational programs for senior citizens in Queens County. The Alpha Phi Alpha Fraternity, Inc. (an intercollegiate fraternity) has an alumni chapter known as The Zeta Zeta Lambda Chapter, and the chapter is the sponsor or founder of the senior citizens center. Defendant Zeta Zeta Lambda Company, Inc., another New York not-for-profit corporation, is the landlord of the building from which the plaintiff senior citizens center operates.
In 1994, the sponsor and the senior citizens center agreed to pool their resources for the purpose of acquiring a better facility. The senior citizens center promised both (a) to contribute $20,000 toward the purchase of a building by the sponsor located at 220-01 Linden Boulevard, Cambria Heights, in Queens County, New York and (b) to become the tenant at the building. The sponsor promised to collect rent from tenants at the building, pay expenses, and to pay the net income to the senior citizens center in the form of capital contributions.
In 1995, the sponsor organized defendant Zeta Zeta Lambda Company, Inc. (the defendant company) to act as its agent for the purpose of implementing the 1994 agreement with the senior citizens center. The sponsor intended to keep control over the defendant company, and, to that end, the original by-laws of the defendant company provided: " The Board of Directors shall be composed of not less than seven *** individuals of whom at least three fourths (3/4) shall be members in good standing of Alpha Phi Alpha Fraternity, Inc., Zeta Zeta Lambda Chapter." The defendant company's original certificate of incorporation states that its purpose is "to hold property, collect income therefrom, and to turn over the entire amount less expenses to the Alpha Phi Alpha Senior Citizens Center, Inc."
In 1996, the defendant company purchased the building, which needed approximately eleven years of renovation before it could be used as intended, and the senior citizens center did not sign a lease and move into the building until 2006 and 2007 respectively.
The defendant company began to collect rent from the building in 2007 and began to claim depreciation expenses. From 2007 through 2013, the defendant company collected approximately $680,470 in rent from the senior citizens center and has claimed approximately $527,548 in depreciation expenses.
In or about the spring of 2011, the chairman of the senior citizens center met with the [*2]defendant directors of the defendant company for the purpose of demanding the capital contributions due the senior citizens center, but the defendant company did not comply with this and similar demands. In or about November, 2012, the senior citizens center demanded $30,877 from the defendant company, but the company refused the demand. The complaint essentially accuses the directors of the defendant company of mishandling finances and jeopardizing the company's purpose of funding the senior citizens center.
In or about September, 2012, defendant Jeffrey Terry, one of the directors of the defendant company, announced that the defendant company had unilaterally decided to amend the company's by-laws for the purpose of removing the requirement that three fourths of the directors be members of the sponsor. The new by-laws were filed in July, 2013.
On or about February16, 2013, the sponsor served the defendant directors with a notice of termination of their positions. The defendant directors rejected the notice of termination.
II. The Cross Claimant
Plaintiff senior citizens center joined Kenyatta Andrews, the president of the sponsor, as a "necessary party." ( The reason for not making the sponsor a plaintiff in this case eludes the court.) The causes of action asserted in the cross claim are similar to those in the complaint.
III. The Documentary Evidence
The certificate of incorporation filed for Zeta Zeta Lambda Holding Co., Inc. on June 22, 1995 provides: "Fourth: The corporation shall be a Type B corporation pursuant to section 201 of the Not For Profit Corporation Law." Section 201(c) of the Not for Profit Corporation Law ("N-PCL"), in relevant part, provides: " A Type B or Type C not for profit corporation formed prior to July first, two thousand fourteen shall be deemed a charitable corporation for all purposes under this chapter." Gerald Weinberg signed the certificate as the incorporator.
Article II of the defendant company's by-laws provided: "The Corporation shall have no members." Article III of the by-laws, pertaining to the Board of Directors, provides: "Section 1. General Powers. The direction and management of the Corporation's business and affairs *** shall be vested in a self-perpetuating Board of Directors. *** Section 2. Number and Qualifications. The Board of Directors shall be composed of not less than seven *** individuals of whom at least three fourths (3/4) shall be members in good standing of Alpha Phi Alpha Fraternity, Inc., Zeta Zeta Lambda Chapter." ***Section 9. Resignation and Removal. ***Removal of a director, with or without cause, may only be effected by the affirmative vote of two-thirds (2/3) of the entire membership of the Board of Directors ***."
The certificate of incorporation filed for Zeta Zeta Lambda Holding Co., Inc on June 22,1995 merely stated in regard to membership on the board of directors: "Fifth: The names and addresses of the initial directors of the corporation are as follows ***."
In 1997, the defendant company filed a certificate of amendment to the certificate of incorporation which changed the name of the company to "Zeta Zeta Lambda Company, Inc." and which broadened the purposes of the company, to include, inter alia, "creat[ing], form[ing],and establish[ing] a charitable organization for the benefit of senior citizens and young people ***." The amendment to the certificate is silent about membership on the board of directors.
IV. The Attorney General
In September, 2013, the sponsor and the senior citizens center brought their grievance [*3]about the operations of the defendant company arising from the changes to the by-laws and the certificate of incorporation to the attention of the Charities Bureau of the Attorney General's Office. After reviewing documents and holding meetings with them, the Attorney General informed them that it would take no action.
The plaintiff subsequently joined the People of the State of New York by their Attorney General as a "necessary party." Paragraph 85 of the complaint alleged: "The Senior Citizens Center has joined the Attorney General of New York to this action because the Company is a non-member not for profit corporation and section 706(d) of the Not For Profit Corporation Law of New York confers standing on the Attorney General to bring actions to remove directors of non-member not for profit corporation[s] for cause."
The Attorney General moved to dismiss the complaint on the grounds that his office was not a necessary party and that the complaint failed to state a claim against him. The Attorney General argued, inter alia, that his " participation in the case is not necessary to resolve the disputes between the parties, " that he was not a necessary party pursuant to CPLR 1001, and that his decision to take no action pursuant to N-PCL section 706 was not subject to judicial review.
Pursuant to an order dated September 10, 2015, the Honorable Duane Hart held the Attorney General's motion in abeyance "pending a further status conference held by the duly appointed receiver."
V. The Fraternity
On or about October 10, 2014, the chapter made a request to the Eastern Regional Vice-President of the fraternity for its intervention, and he discussed the problems with two of the director defendants who took the position that the chapter had "no rights' over the defendant company. At the time of the filing of the complaint, he had not decided whether to grant the chapter's request to expel the director defendants from the fraternity.
VI. The Second, Fifth, and Sixth Causes of Action
The second cause of action alleges: "Sponsor and Company defendant entered into a governance agreement which stated that the Board of Directors [of the company] shall be composed of not less than seven *** individuals of whom at least Three Fourths (3/4) shall be members in good standing of [the Sponsor]. *** The bylaws were wrongfully amended to remove the Sponsor's right to govern the Company in furtherance of the purpose of the Company under its Certificate of Incorporation.'" The new by-laws, in relevant part, read: " The Board of Directors shall be composed of not less than five (5) [nor] more than eleven (11) individuals of whom at least Three Fifths (3/5) shall be duly initiated members of Alpha Phi Alpha Fraternity, Inc." The second cause of action seeks damages.
The fifth cause of action seeks a declaratory judgment that the newly adopted by-laws are null and void.
The sixth cause of action in effect requests that this Court appoint certain individuals as new directors of the company.
DISCUSSION
A. No Statutory Basis for Removal of the Directors
N-PCL section 601, entitled "Members," in relevant part, provides:
(a) A corporation shall have one or more classes of members, or, in the case of a charitable corporation, may have no members, in which case any such provision for [*4]classes of members or for no members shall be set forth in the certificate of incorporation or the by-laws. Corporations, joint-stock associations, unincorporated associations and partnerships, as well as any other person without limitation, may be members."
In the case at bar, the by-laws provide that the defendant company shall have no members.
N-PCL section 706 "Removal of Directors," in pertinent part, states:
(a) Except as limited in paragraph (c), any or all of the directors may be removed for cause by vote of the members, or by vote of the directors provided there is a quorum of not less than a majority present at the meeting of directors at which such action is taken.
(b) Except as limited in paragraph (c), if the certificate of incorporation or the by-laws so provide, any or all of the directors may be removed without cause by vote of the members."
Since the sponsor is not a member of the defendant company, there is no basis in N-PCL § 706 for its attempted removal of the latter's directors.
B. Alleged Violation of the Certificate of Incorporation
"Any attempt to amend or adopt by-laws in a manner that violates the certificate of incorporation of a not-for-profit corporation is null and void ***," (Keogh v. Connolly, 235 AD2d 241, 241; Herbert H. Lehman Coll. Found., Inc. v. Fernandez, 292 AD2d 227; see, N-PCL §§ 602[b],[c],[f]; Malankara Archdiocese of Syrian Orthodox Church in N. Am. v. Thomas, 33 AD3d 887.) In the case at bar, the certificate of incorporation merely designates certain individuals as the initial directors of the defendant company and is otherwise silent about the composition of the board. The amendment of the company's by-laws for the purpose of removing the requirement that three fourths of the directors be members of the sponsor did not violate the certificate of incorporation.
C. Third-Party Beneficiary Theory Based on the By-Laws
"A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [its] benefit and (3) that the benefit to [it] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [it] if the benefit is lost" (Nanomedicon, LLC v. Research Found. of State Univ. of NY, 112 AD3d 594, 596 [internal quotation marks omitted]; Town of Huntington v. Long Island Power Auth., 130 AD3d 1013.)
The by-laws of a not for profit corporation constitute a contract among the members themselves and between the members and the corporation. (Procopio v. Fisher, 83 AD2d 757; see, ALH Properties Ten, Inc. v. 306-100th St. Owners Corp., 191 AD2d 1, 16, aff'd as modified, 86 NY2d 643). In the case at bar, the defendant company, however, has no members to enter into a contract among themselves or with the corporation.Since the by-laws do not constitute a contract among members themselves or between members and the corporation in this case, the plaintiff and the sponsor cannot successfully sue on a third party beneficiary theory based on the by-laws.
"A third-party, who is not a member of the association or corporation nor a party to the bylaws, lacks standing to bring suit against an organization for violation of its bylaws." (Stolow v. Greg Manning Auctions Inc., 258 F. Supp. 2d 236, 249 (S.D.NY), aff'd, 80 Fed. Appx. 722).
D. Cases Cited By The Plaintiff
Plaintiff cites two cases that really do not shed much light on the issues presented in this action. First, in Silver Street Development Corporation II v. Park Lake Housing Development Fund Corp. (2004 WL 3422047, 2004 NY Slip Op. 51888(U) [Sup. Ct. Nassau County] [Warshawsky, J.]), the court decided the issue of which of two boards of directors had authority to deal with the plaintiff buyer, Silver Street Development Corporation, in order to effect a sale of property, a 240-unit low income apartment complex owned by defendant Park Lake Housing Development Fund Corp. In 1970, The Union Baptist Church located in Hempstead New York sponsored Park Lake, a not-for-profit corporation created to provide housing for low-income residents in the area. A board of directors oversaw Park Lake , and the directors had to be "members" in the corporation. They became members by receiving the approval of the Board of Trustees of the Union Baptist Church. The by—laws of Park Lake provided that membership in Park Lake was limited to persons who had the approval of the Union Baptist Church. If the church board withdrew its approval, the member was deemed to have resigned.
On September 30, 2003, the Reverend Clinton C. Boone of the Union Baptist Church and President of the Park Lane Board, executed a contract of sale for the property, However, on October 22, 2003, the Union Baptist Church withdrew its support for the Park Lake Board as then constituted and replaced four of five members of Park Lake. The replacements were duly installed to become the governing board. Seeking to negate the effect of the church board's withdrawal of approval, on November 4, 2003, Gerald Gardner Wright, a member of the old board, moved to file a Restatement of Certificate of Incorporation for Park Lake which, inter alia, (1) changed the corporation from a Type B corporation to a Type D Corporation and (2) changed the procedure for the election of directors of Park Lane to eliminate Union Baptist Church control. On June 9, 2004, the Attorney General's Office contactedWright and informed him that the amendment of the certificate of incorporation had no effect without its approval.
The buyer subsequently began an action for specific performance. The court observed that to date the Attorney General's Office had not approved the amendment of the certificate of incorporation " with the result that the Board of the Union Baptist Church continues to control the appointment of the Directors of Park Lake. Insofar as the Church revoked approval of the Directors sitting on October 22, 2003, those individuals are divested of all authority to act as a representative of Park Lake, and Gerald Wright P.C., no longer is counsel representing Park Lake." ( Silver St. Dev. Corp. II v. Park Lake Hous. Dev. Fund Corp., 2004 WL 3422047, *3, supra). The court there added: "The foregoing recitation of events occurring between October and November of 2003 are consistent with the requirements of the Certificate of Incorporation and By-Laws of Park Lake for installing a Board of Directors to make management decisions about the housing complex." (Silver St. Dev. Corp. II v. Park Lake Hous. Dev. Fund Corp., 2004 WL 3422047, *3, supra).
The old board raised the issue of whether N-PCL section 706 prevented "the Directors of the Union Baptist Church from forcing the resignation of a director of Park Lake by withdrawing their approval of membership." While the statute permits the removal of a director by members of the corporation or by other directors, it is silent about removal by the action of another entity.
The old board also raised the issue of whether the church board's control over Park Lane's board " stifles' the directors of Park Lake from fulfilling their fiduciary duty to freely, independently and unreservedly act in the best interests of Park Lake since they must be mindful [*5]to please the Directors of the Union Baptist Church." (Silver St. Dev. Corp. II v. Park Lake Hous. Dev. Fund Corp., 2004 WL 3422047, *3, supra).
The court found "no reason not to recognize the ultimate control the Union Baptist Church has over the composition of the Board of Directors of Park Lake." (Silver St. Dev. Corp. II v. Park Lake Hous. Dev. Fund Corp., supra, 3.)
While the fact pattern in the cited case has some similarities with the case at bar, the issues raised in the former differ from the issues raised in the latter, and the cited case has limited precedential value.
Next, in Keogh v. Connolly (235 AD2d 241), the Appellate Division, First Department held that a provision in the by-laws of not for profit corporations allowing the pastor of a church to endorse or withdraw his endorsement of directors, as long as the corporation held property subject to a Department of Housing and Urban Development (HUD) mortgage, "was properly adopted by the Corporations and was valid" and did not violate the Establishment Clause of the First Amendment of the U.S. Constitution. However, the by-laws of the defendant company differ from those in Keogh concerning qualifications for board membership and removal of directors, and the issues raised in Keogh differ from those raised in the case at bar.
E. Summary Judgment
"[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact ***." ( Alvarez v. Prospect Hospital, 68 NY2d 320, 324.) The plaintiff senior citizens center failed to carry this burden.
As previously discussed, the Court finds that there is no statutory basis for the removal of the directors, that the amendment of the by-laws did not violate the certificate of incorporation, that the senior citizens center cannot claim to be the third party beneficiary of the defendant company's by-laws, and that Silver St. Dev. Corp. II v. Park Lake Hous. Dev. Fund Corp. (supra), and Keogh v. Connolly (supra) are of little avail. The plaintiff claims that there was a governance agreement between the sponsor and the defendant company at the time the latter was created which had the purpose of giving the former control over the latter's board, which is a plausible theory. The record, however, contains conflicting evidence about the existence and terms of the alleged governing agreement. For example, on the one hand, the sponsor itself organized the defendant company to hold title to the building occupied by the senior citizens center and to fund it from the rents, and, to ensure that these purposes were met, the sponsor allegedly kept control over the company by the 3/4's requirement concerning membership in the chapter.
On the other hand, the company's by-laws established a "self-perpetuating board" with the sole authority to remove directors. The sponsor, moreover, did not make itself a member of the defendant company, as permitted by N-PCL section 601(a), which would have definitely ensured its control. 
"It is well settled that where the facts permit conflicting inferences to be drawn, summary judgment must be denied." (Morris v. Lenox Hill Hospital, 232 AD2d 184, 185, aff'd, 90 NY2d 953; Myers v. Fir Cab Corp., 64 NY2d 806; accord, Chimbo v. Bolivar, ____A.D.3d ______, 2016 WL 4769444, at *1, 2016 NY Slip Op. 05969 (2nd Dept. Sept. 14, 2016); Parietti-Fogarty v. Fogarty, 141 AD3d 512; Disa Realty, Inc. v. Rao, 137 AD3d 740, 741; Open Door Foods, [*6]LLC v. Pasta Machines, Inc., 136 AD3d 1002, 1005; Proactive Dealer Servs., Inc. v. TD Bank, 131 AD3d 1216, 1219.
The Court also finds that this motion is premature before the conclusion of discovery which might shed light on such issues, as:

 (1) whether the sponsor and the defendant company entered into a governance agreement;
(2) if so, whether the governance agreement expressly or by implication placed limitations on the power of the defendant company to change its by-laws and certificate of incorporation;
(3) whether the defendant company agreed to enact a by-law giving the sponsor control over its board;
(4) if so, what was the extent of the control particularly in regard to the appointment and removal of directors;
(5) whether the sponsor and the defendant company entered into an agreement concerning an alleged obligation of the latter to pay its net income to the senior citizens center;
(6) if so, whether this agreement was terminated by a subsequent agreement of the parties;
(7) whether the senior citizens center is a third party beneficiary of any agreements between the sponsor and the defendant company; and
(8) whether there are grounds for the imposition of a constructive trust over the building.

From the sketchy affidavits and hearsay materials submitted by counsel, this Court discerns that full and open discovery will be productive. The Court thus denies the motion.
The Cross Motion
The defendant company argues that its directors were free to amend the certificate of incorporation at any time. N-PCL section 802, entitled "Authorization of amendment or change, class vote," in pertinent part, provides:
(a) Amendment or change of the certificate of incorporation shall be authorized:
(1) If there are members entitled to vote thereon, by majority vote of such members at a meeting as provided in paragraph (c) of section 613 [Vote of members].
(2) If there are no members entitled to vote thereon, by vote of a majority of the entire board" (emphasis added).
The defendant company has no members, and its by-laws stated: "The direction and management of the Corporation's business and affairs *** shall be vested in a self-perpetuating Board of Directors." Pursuant to N-PCL section 804, on notice to the Attorney general and with the approval of a Justice of the Supreme Court, the defendant company amended its certificate of incorporation.
The defendant company points out that in 1997 it amended its certificate of incorporation to change its corporate purpose. In doing so, it eliminated the provision requiring it "[t]o hold title to property, collect the income therefrom," and to turn over the net income to the senior citizens center. The new corporate purposes were stated as: " To create, form, and establish a charitable organization for the benefit of senior citizens and young people; to endeavor to promote, foster and advance the stimulation and motivation of senior citizens and young people; to support educational advancement opportunities for youth; [etc.]" The defendant company argues that any breach of an obligation to turn over net income to the senior citizens center occurred in 1997, and the six year statute of limitations applicable to a breach of contract action ran before this law suit was filed.
The defendant company also points out that in December, 2006, the plaintiff and the defendant company entered into a lease which contained a merger clause: "Entire Agreement. This instrument contains the entire and only agreement between the parties, and no oral statements or representations or prior written matter not contained in this agreement shall have any force and effect." The lease does not contain any provision requiring the defendant company to pay its net income to the plaintiff, and the defendant company argues that the merger clause bars the plaintiff from relying on the terms of the original certificate of incorporation.
The director defendants argue that neither the sponsor nor the senior citizens center has standing to assert causes of action against them based on their conduct as directors of the defendant company.
The defendants did not carry their burden of establishing a prima facie entitlement to summary judgment. (See, Alvarez v. Prospect Hospital, 68 NY2d 320, supra). First, the defendant's argument based on its right to amend its certificate of incorporation ignores the possibility that it entered into a governance agreement with the sponsor which placed limitations on its freedom to amend the certificate of incorporation. Second, CPLR 213(2), a six-year statute of limitations, controls a cause of action to recover damages for breach of contract (see, Chi Kee Pang v. Synlyco, Ltd., 89 AD3d 976), and the period begins to run at the time the cause of action accrues, that is , at the time of the breach (see, Yarbro v. Wells Fargo Bank, N.A., 140 AD3d 668).
In the case at bar, the cause of action for breach of the alleged agreement to pay income to the senior citizens center accrued in 2011 or 2012 when the defendant company refused payment, not in 1997 when the requirement was deleted from the certificate of incorporation. Third, the merger clause in the lease does not bar the sponsor from asserting the existence of a governing agreement and a net income agreement. Fourth, the complaint alleges that the individual defendants were not only directors of the defendant company, but also agents of the sponsor, and whether the sponsor has a basis for asserting liability against them as agents is an issue which should be determined after discovery. The Court, therefore, denies the cross motion.
The Court, accordingly, denies both the motion and the cross motion.
The foregoing constitutes the decision, order, and opinion of the Court.
Dated: September 21, 2016
Jamaica, New York
Hon. Martin E. Ritholtz
Justice, Supreme Court, Queens County